498 So.2d 218 (1986)
Robert L. FREEMAN
v.
GUARANTY BROADCASTING CORP. d/b/a WAFB Television and Denny Brand.
No. 86 CW 0948.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
*219 Lewis O. Unglesby, Baton Rouge, for Robert L. Freeman
Roger M. Fritchie, Jack M. Weiss, Baton Rouge, for Guaranty Broadcasting Corp., WAFB Television and Denny Brand.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
Upon application of Guaranty Broadcasting Corporation, which owns WAFB-T.V. in Baton Rouge, Louisiana, and Denny Brand, a news reporter employed by WAFB-TV, (hereinafter referred to as WAFB-T.V.) for relief under our supervisory jurisdiction, we granted writs of certiorari, prohibition, and mandamus to review an order of the Eighteenth Judicial District Court, which granted a Motion for Protective Order in globo on behalf of the Department of Public Safety and Corrections, Office of State Police and of Corrections Services (hereinafter referred to as State Police) and denied an alternative Motion In Limine filed by applicants.

FACTS
On October 4, 5, 7 and 8, 1985, WAFB-T.V. aired a television series entitled "A Summer of Surveillance Involving Politicians, Police and Pushers." The broadcasts alleged that a major cocaine dealer, Louis G. Giavasis, met on three occasions with Lieutenant Governor Robert L. Freeman (hereinafter referred to as Freeman) and his executive assistant, Curtis Landry (hereinafter referred to as Landry). The broadcasts also alleged Freeman was under surveillance by federal drug agents. WAFB-T.V.'s broadcasts also stated Giavasis had met with Freeman about favored treatment in seeking the contract on the state's construction of a bridge.
The program was allegedly based on information provided by a 1984 affidavit, of an Ohio federal drug enforcement agent, which had been executed to obtain wiretap authorization on Louis G. Giavasis and various other parties. The affidavit was unsealed in 1985. According to the affidavit, the surveillance of Giavasis, which had been conducted by various federal and state law enforcement agencies, traced Giavasis' contacts in Louisiana to Freeman and his assistant Landry. In various portions of the affidavit, the following information was set forth:
Paragraph 138. On August 16, 1984, the source [later identified as Giavasis' wife, Judy] advised ATF [Bureau of Alcohol, Tobacco and Fire Arms] Special Agent Patrick J. Berarducci that Louis G. Giavasis was to meet Curtis *220 Landry at the Hilton Hotel, Cottage [College] Drive, Baton Rouge, Louisiana, on the afternoon of August 16, 1984. The source further advised that Curtis Landry is believed to be the individual that had met Louis G. Giavasis at Steve Stathes house in Baton Rouge, Louisiana, on approximately June 3, 1984, and discussed a possible cocaine deal involving five kilos per month and the use of and possible sale of a State airplane (see paragraph 103). The Louisiana State Directory lists Curtis Landry as an executive assistant to Lieutenant Governor of Louisiana, Bobby Freeman.
Paragraph 139. On August 16, 1984, FBI surveillance placed Louis G. Giavasis and a man believed to be Curtis Landry together at the Hilton Hotel, Cottage [College] Drive, Baton Rouge, Louisiana.
Paragraph 140. On August 17, 1984, FBI surveillance confirmed Louis G. Giavasis and Bobby Freeman, the Lieutenant Governor of Louisiana, meeting at the Hilton Hotel, Lake Charles, Louisiana. Immediately after the meeting, Louis G. Giavasis, a male believed to be Curtis Landry, and two additional males whose identities have yet to be confirmed, left the Hilton Hotel in an automobile and traveled together to a condominium in Lake Charles. FBI surveillance at the Hilton Hotel during the time that Giavasis and the other males were present confirmed the presence of a Lincoln automobile; license plate HANKS, preceded by a Louisiana State Police car. FBI surveillance confirmed the presence of this same Lincoln automobile; license plate HANKS, and a Louisiana State Police car parked in close proximity to the condominium where Giavasis and the other males had gone within minutes of the males' arrival. FBI surveillance confirmed the Lincoln automobile; license plate HANKS, preceded by the Louisiana State Police car leave the condominium approximately ten minutes later and proceed to a private concourse at the Lake Charles airport. Lt. Governor Bobby Freeman and other unidentified males were observed inside the terminal and to board a Louisiana State aircraft for departure.
Freeman filed a defamation suit against WAFB-TV and Denny Brand seeking damages allegedly caused by the October, 1985 WAFB-TV's broadcasts. In the petition, Freeman alleged that the applicants falsely and maliciously linked Freeman with illegal drug activity and thereby greviously injured his reputation and good name. Freeman contended that he never had a meeting with Giavasis, except to shake his hand briefly at a reception. Freeman also denied ever having any discussion with Giavasis about drugs or the I-10 bridge construction. Freeman alleged that Denny Brand went beyond the statements found in the federal affidavit and colored the facts in such a way as to indicate a non-existent close relationship between Freeman and Giavasis. Freeman's petition quoted portions of the newscasts which were both allegedly false and malicious despite Brand's knowledge of the falsity.
In answering Freeman's petition, applicants asserted the defense of privilege as it relates to the contents of the Ohio affidavit. Applicants also contended that the broadcasts were true or substantially true and that Freeman, as a public official, could not show, by clear and convincing evidence, that the newscasts were aired with actual malice.
WAFB-T.V. propounded interrogatories to Freeman, and the interrogatories were answered. On May 16, 1986, WAFB-T.V. served on the State Police and the East Baton Rouge Parish Sheriff's office subpoenas duces tecum for a deposition to be held on May 27, 1986, in Baton Rouge. The subpoenas were issued pursuant to LSA-C.C.P. art. 1442 and required the respective law enforcement agencies to designate one or more officers to testify about the matter set forth in the deposition notice and to produce documents and recordings *221 identified in a schedule annexed to the subpoenas.[1]
The subpoenas also sought the production of law enforcement documents relating to the allegations which gave rise to Freeman's defamation suit. The subpoenas specifically requested all documents from any federal, state, and local law enforcement agency that pertained to any investigation of Landry and other listed state employees. Also, WAFB-T.V. sought all documents relating to state police policies on the confidentiality of their law enforcement activities. The WAFB-T.V. subpoena requested all documents of the state police which related to Freeman's alleged assistance in the investigation of Landry's illegal drug activities. Further, the subpoenas sought the production of the transcripts and records of both Landry interrogations, which had previously been made public. The first interrogation resulted from the federal surveillance, which observed the association of Landry and Giavasis. The second interrogation resulted when the Governor of the State of Louisiana received an anonymous letter stating that an employee in the Lieutenant Governor's office was involved with drugs.[2] The subpoenas also requested production of that anonymous letter.[3] In the event the law enforcement agencies asserted the claim of privilege, the subpoenas duces tecum contained explicit instructions for the itemization and specification of asserted privilege.
After the State Police were served with the subpoena and subpoena duces tecum, the State Police obtained an ex parte order staying the deposition of its representative. The applicants were subsequently served with a copy of the Motion for In Globo Protective Order which sought to prevent the disclosure of any documents or recordings relevant to the Landry/Giavasis case and, thus, relevant to the Freeman defamation case. The State Police contend that the Public Records Law, LSA-R.S. 44:1 et seq., excuses it from providing the entirety of the subpoenaed information.
WAFB-T.V. then filed a Motion In Limine to limit the testimony of Wiley McCormick. WAFB-T.V. was concerned that McCormick would testify as to material facts located in those varied documents for which the in globo protective order was sought.
The trial court scheduled a contradictory hearing on the Motion for Protective Order on June 12, 1986. At the hearing, the State Police did not produce the subpoenaed documents, and stated that all documents were being withheld pursuant to a claim of privilege. The trial court continued the hearing by joint request of counsel until June 26, 1986, to allow each side an opportunity to narrow the issues and to settle their differences informally.
At the hearing on June 26, 1986, the trial judge granted the State Police's Motion for In Globo Protective Order with minor exceptions and denied WAFB-T.V.'s Motion In Limine.
In the application for relief from this court, applicants complain that the trial judge erred as follows:[4]
1. The trial court erred in granting a protective order based on the law enforcement privilege set forth in La.R.S. 44:3 and shielding hundreds of relevant documents:
(a) without any itemization of the allegedly privileged documents or particularized application of the asserted privilege to particular documents or portions thereof;
(b) without any demonstration or finding that any particular document or documents pertain to "pending criminal litigation or any criminal litigation which can be reasonably anticipated";

*222 (c) without any demonstration or finding that any particular document or documents "contain the identity of a confidential source of information or... would tend to reveal the identity of a confidential source of information";
(d) without any demonstration or finding that any particular document or documents contain "security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, or internal security information;" and
(e) without fully affording the defendants the opportunity, without undue restrictions by the Court, to conduct a searching cross-examination of the State Police with respect to their claims of privilege.
2. Even if this Court were to find that there was sufficient basis in the record to support a claim of privilege, the trial court erred in failing to hold that the privilege has been waived by the public disclosure of the identity of the "confidential source" and by respondent's public discussion of the very information sought to be protected.
3. The trial court erred in denying the defendants' Alternative Motion In Limine to Exclude Trial Testimony of Colonel Wiley D. McCormick, thereby permitting McCormick to testify at trial for the plaintiff, about the subject matter of the very documents to which he, as Superintendent of the State Police, has asserted the privilege of La.R.S. 44:3, and thus precluded meaningful cross-examination or presentation of contrary evidence by the defendants, in violation of defendants' federal and state constitutional rights to due process of law.

RELEVANCE
Because the grant of the protective order is based on the assertion that the material sought is privileged, WAFB-T.V. must first prove the information is relevant to the subject matter of the suit. Under LSA-C.C.P. art. 1422, parties may obtain discovery regarding any matter which is relevant and not privileged. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Hodges v. Southern Farm Bureau Casualty Insurance Company, 433 So.2d 125 (La.1983).
Freeman's defamation suit quotes specific portions of the allegedly defamatory broadcasts. WAFB-T.V. contends that the documents requested are relevant in that the issue is not simply whether Freeman knew, met or discussed drugs or state contracts with Giavasis, but whether the broadcasts improperly linked Freeman with the illegal drug trade, thereby damaging Freeman's reputation. WAFB-T.V. reasons that the substantial truth doctrine would make the full range of Freeman's activities and associations in the illegal drug trade directly relevant and admissible. If the documents sought to be discovered establish that Freeman had other unsavory associations or activities that contradict his allegations that the broadcasts were false, the broadcasts would be substantially true. WAFB-T.V. further reasons that the Landry interrogation transcripts, recordings, and other such evidence are essential to determine the extent, if any, of Freeman's involvement with Landry, Giavasis and/or the federal, state, and local investigations. Clearly, the documents are relevant and must be produced, if not privileged.

PRIVILEGE
The State Police claim that all of the documents sought are protected by the privilege found in LSA-R.S. 44:3, which provides in pertinent part as follows:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, police departments, Department of Public Safety and Corrections, marshals, investigators, including public health investigators and inspectors, correctional *223 agencies, or intelligence agencies of the state, which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled; or
(2) Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information; or
(3) Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, or internal security information; or
(4) The records of the arrest of a person, other than the report of the officer or officers investigating a complaint, until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction. However, the initial report of the officer or officers investigating a complaint, but not to apply to any followup or subsequent report or investigation, records of the booking of a person as provided in Louisiana Code of Criminal Procedure Article 228, records of the issuance of a summons or citation, and records of the filing of a bill of information shall be a public record.
(5) Records containing the identity of an undercover police officer or records which would tend to reveal the identity of an undercover police officer; or
(6) Records concerning status offenders as defined in the Code of Juvenile Procedure; or
(7) Records containing the identity of a subject of a public health disease investigation or study or records which would tend to reveal the identity of such a subject.
The State Police reason that the subpoenaed documents are privileged, and not subject to discovery, because the records: 1) pertain to ongoing criminal litigation; 2) contain names of confidential informants; 3) reveal investigative techniques; and 4) contain uncorroborated information relating to third persons. However, rather than making individual assertions of privilege as to particular documents, the State Police asserted their claim of privilege in globo against the entirety of their mass of records.
The assertion of privilege under the Public Records Law has been interpreted by the Supreme Court in Conella v. Johnson, 345 So.2d 498 (La.1977). In Conella, a subpoena and subpoena duces tecum were addressed to an assistant district attorney and deputy sheriff in connection with a civil action for malicious prosecution. The initial complaint against the defendant had been the subject of a nolle prosequi, and a second criminal complaint arising out of the same transaction had been filed. The trial court granted the district attorney's motion to quash the subpoena under LSA-R.S. 44:3 since the district attorney had alleged the privilege of pending criminal litigation. The Supreme Court reversed the trial judge, and held that LSA-R.S. 44:3 requires more than a judicial acceptance of the prosecutor's assertion of the privilege. The Court stated that a meaningful opportunity must be afforded for a cross-examination and presentation of evidence to contradict the assertion of the privilege. If the party seeking the information in the civil action can demonstrate the inapplicability of the privilege, the records sought must be made available to him. The Court also held that the district attorney and deputy would be subject to deposition concerning the nature of the records as well as their knowledge of the related events. Conella v. Johnson, supra.

A. ONGOING CRIMINAL LITIGATION
At the June 26, 1986 hearing in the instant case, the State Police did not produce the subpoenaed documents. Instead, the State Police presented the testimony of several witnesses, including: the Director of Court Aide of the State Police, Frank *224 Blackburn; the Deputy Commissioner of Narcotics of the State Police, Robert Thomason; District Attorney, Brian Bush; Assistant District Attorney, Glenn Lorio; and the Superintendent of the State Police, Col. Wiley McCormick. The witnesses did not examine the documents individually to determine whether the privilege of ongoing criminal litigation could be asserted as to each document or portions thereof. The State Police classified all of the documents as "active intelligence information," to denote information that may be corroborated at an unknown time in the future by law enforcement. The classification is an instance of privileged information that is precluded from disclosure.
The assertion of the privilege of "active intelligence information," must be evaluated in light of LSA-R.S. 44:3(A)(1) to determine whether the records concern "pending criminal litigation or any criminal litigation which can be reasonably anticipated " (emphasis added). This determination must be made on an item by item examination and subject to judicial review. See Conella v. Johnson, supra.
Based on the transcript of the entire record, it is clear that the State Police did not establish that any of the information protected by the in globo protective order constituted information relating to ongoing criminal litigation. A simple assertion that the information existed and that, at some time in the future, corroborating evidence may come to light does not justify granting of the privilege.
However, we cannot preclude that all of the information sought to be produced is not subject to the assertion of privilege. Indeed, such a determination can be made only after a contradictory hearing as enunciated in Conella.

B. CONFIDENTIAL INFORMANT
The second basis for the assertion of privilege is that the documents contain the identities of confidential sources. The witnesses who testified on behalf of the State Police feared that if the records were produced, that a negative effect on future investigations would result. The State Police reasoned that if an informant's name was revealed, other persons may be reluctant to assist law enforcement agencies for fear of being identified.
In Fryar v. Guste, 371 So.2d 742 (La. 1979), the Supreme Court defined a confidential informant as one who has or claims to have knowledge of a particular criminal matter or event and is willing to give such information to representatives of a law enforcement agency provided his identity is kept secret or in confidence. A confidential informant is not confidential when the law enforcement agency or informant publicly releases the identity of the informant. However, certain privileged information supplied by the informant may continue to be privileged under other sections of LSA-R.S. 44:3 et. seq. See Fryar v. Guste, supra.
In the instant case, the identity of Landry is not privileged because the State Police publicly identified him as a confidential informant. Col. McCormick testified that he believed Landry had been given confidential status by a law enforcement agency, and District Attorney Bush testified that his investigators had told Landry his information would be kept confidential. However, Col. McCormick destroyed that confidentiality when he told newsmen at a press conference that Landry had named certain individuals as being involved with the illegal drug trade.
Clearly, on the record before us, Landry's status as a "confidential informant" is not supported. However, we cannot say that all information given by Landry or pertaining to Landry is discoverable or that the information sought to be discovered does not contain information which might reveal the names of other confidential informants. Such a determination can be made only after a contradictory hearing under the guidelines established in Conella.

*225 C LAW ENFORCEMENT TECHNIQUE
The third basis for the assertion of the privilege is that investigative techniques might be revealed if the documents were not protected. A general assertion that the documents reveal investigative techniques is insufficient to justify the privilege.
The State Police produced no documents, testimony, or any other evidence to substantiate the claim. Clearly, the standards of Conella have not been met to substantiate the State Police's assertion of privilege that production of the documents would reveal classified law enforcement techniques.

D. INNOCENT THIRD PERSON
The final reason advanced for asserting the privilege over the subpoenaed documents is that the documents contain unsubstantiated accusations which may be damaging to third persons.
While we acknowledge that potential damage to third persons is a valid concern, LSA-R.S. 44:3 does not extend the privilege to the potential damage of third persons. Furthermore, an in camera examination of each document by the trial judge with the excision and/or deletion of third parties' names (other than those specifically listed in the subpoenas) can be accomplished, without prejudicing the rights of innocent third parties.

CONCLUSION
By enacting LSA-R.S. 44:1 et seq., the legislature recognized that due process and constitutional considerations require a balancing of individual rights and privileges against the integrity of law enforcement agencies' confidential sources. In Conella v. Johnson, supra, our Supreme Court provided guidelines for a judicial determination of whether the integrity of a law enforcement agency's sources would be compromised by the exercise of an individual's rights to discover information in a civil proceeding.
We find that the hearing conducted in the instant case did not comport with the directives of LSA-R.S. 44:3 and Conella, which require that a judicial determination be made after a contradictory hearing. LSA-R.S. 44:3 requires more than judicial acceptance to a general assertion of the privilege. A meaningful opportunity must be afforded for cross-examination and other evidentiary processes to contradict the claim of privilege.
We conclude that the hearing conducted in the instant case was inadequate to support a judicial determination of the assertion of privilege. This Court recognizes the delicate balance that must be maintained among the valid concerns of law enforcement, the rights of the defendants in this matter and innocent third parties. We remand the case to the district court for a contradictory hearing held in conformity with LSA-R.S. 44:3, Conella, and guidelines set forth herein and as follows:
It is herein ordered that a writ issue herein, directing the Honorable Ian Claiborne, Judge of the Eighteenth Judicial District Court for the Parish of Iberville, to vacate the judgment dated June 26, 1986, granting the Motion for Protective Order and denying the Motion In Limine, and to proceed as follows:
(1) That the State Police be and it is hereby ordered to produce all subpoenaed documents (in its possession or available to it) for an in camera inspection by the trial judge. The documents produced are to be held under strict security and kept confidential, available only to the trial judge and the appropriate appellate court;
(2) That the trial judge make a duplicate copy of each item, with said duplicates to be sealed and maintained confidential and under strict security, subject to the appropriate appellate court's review;
(3) That from the original set of subpoenaed documents (reviewed in camera by the trial judge), the trial judge shall make a detailed in camera inspection of each document produced on an item by item basis and determine whether the documents are first relevant, and, if so, whether they are *226 subject to the privilege as provided for in LSA-R.S. 44:3;
(4) That a representative of the State Police be allowed to testify as to the identity of each document sought to be withheld, altered, or excised, that such representative set forth with specificity the particular privilege claimed, and that he be subject to a meaningful opportunity for cross-examination with respect to each asserted privilege;
(5) That the trial judge shall then examine each document and delete by excising, blocking out, cutting out or withholding in toto any reference to privileged information with regard to:
(1) Pending criminal litigation, or any criminal litigation which can be reasonably anticipated. Litigation which can be reasonably anticipated is that which is the subject of current efforts by law enforcement officials to find corroborating evidence. If no active measures are being taken to obtain corroborating evidence, the litigation cannot be considered to be reasonably anticipated.
(2) The identity of a confidential source, or reference to information which would tend to reveal the identity of a confidential source.
(3) Security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, or internal security information.
(4) The names of any person not named in the Ohio affidavit or whose names have not been raised or will not be raised in connection with the defamation action.
After the trial judge has completed the above, he shall then modify his judgment in accordance with his findings and allow WAFB-T.V. access to the non-privileged information sought. LSA-C.C.P. art. 1426(4); and,
(6) That after the above hearing pursuant to Conella, supra, has been accomplished, the trial court will then reconsider WAFB-T.V.'s alternative Motion In Limine.
REVERSED AND REMANDED.

APPENDIX

18TH JUDICIAL DISTRICT COURT PARISH OF IBERVILLE

STATE OF LOUISIANA

DIVISION "C"

NO. 32,475

ROBERT L. FREEMAN

VERSUS

GUARANTY BROADCASTING CORP. d/b/a WAFB TELEVISION AND DENNY BRAND

NOTICE OF DEPOSITION
TO: Robert L. Freeman, Plaintiff
 Through his attorney of record
 Lewis Unglesby, Esq.
 Unglesby & Brown
 246 Napoleon Street
 Baton Rouge, LA 70802
PLEASE TAKE NOTICE that the undersigned will take the deposition upon oral examination of the Louisiana State Police ("State Police") at the offices of Phelps, Dunbar, Marks, Claverie & Sims, Seventh Floor, City National Bank Building, 445 North Boulevard, Baton Rouge, Louisiana 70802 before a Notary Public or some other officer authorized to take depositions at 9:30 a.m. on May 27, 1986.
Pursuant to Article 1442, the State Police shall designate one or more officers or other persons to testify on its behalf with respect to the following matters:

A. Definitions

1. "Law enforcement activities" shall mean surveillance, investigation, observation, interrogation, arrest, detention or any other activity relating to the investigation, apprehension or prosecution of any person or persons who violate, are reported to have violated, or are suspected *227 of violating any federal, state, or local law.
B. Matters to be Examined

1. Law enforcement activities of the State Police relating to any of the following persons:
a. Robert L. Freeman
b. Curtis L. Landry, Jr.
c. Louis George Giavasis
d. Steve Stathes
e. Lawrence "Larry" S. Frangos
f. Harry Tubbs
2. Any other activities of the State Police relating to any of the following persons:
a. Robert L. Freeman
b. Curtis L. Landry, Jr.
c. Louis George Giavasis
d. Steve Stathes
e. Lawrence "Larry" S. Frangos
f. Harry Tubbs
3. Any written communications and oral communications of the State Police or any of its personnel relating to any of the following persons:
a. Robert L. Freeman
b. Curtis L. Landry Jr.
c. Louis George Giavasis
d. Steve Stathes
e. Lawrence "Larry" S. Frangos
f. Harry Tubbs
4. All written or oral communications of the State Police or any of its personnel with any of the following persons concerning any facts or matters relating to the defamation action of Robert L. Freeman against Guaranty Broadcasting Corporation and Denny L. Brand:
a. Robert L. Freeman
b. Curtis L. Landry, Jr.
c. Michael Baer
d. Lewis Unglesby
e. Camille Gravel, Jr.
f. Ossie Brown
g. Any other persons employed by, assigned to, or acting on behalf of, or at the request of Robert L. Freeman or the office of the Lieutenant Governor of Louisiana.
5. Any written or oral policies, guidelines or standards of the State Police relating to the confidentiality or secrecy of law enforcement activities or to the confidentiality or secrecy of documents and recordings relating to law enforcement activities.
6. Any investigation, actions, or other activities of any kind, taken by Robert L. Freeman at the request of the State Police or any of its personnel in order to assist in an investigation of illegal drug activities with which an employee of the State of Louisiana may have been involved or of which the State employee may have been knowledgeable.
7. Any written or oral policies, guidelines, or standards of the State Police relating to the retention or destruction of records, documents, recordings, and/or evidence.
8. Any information which in any way relates to the subject matter of Robert L. Freeman's defamation suit against Guaranty Broadcasting Corporation and Denny L. Brand.
9. The origin, contents, distribution, preparation, and any other fact pertaining to, reflected in, or relating to each document and each recording described by the subpoena duces tecum to be served on the State Police in connection with this deposition.
10. The following information with respect to each document and each recording described by the subpoena duces tecum to be served on the State Police in connection with this deposition, but withheld from production by the State Police:
a) The date of preparation of such document or recording.
b) A general description of the contents or subject matter of such document or recording.
c) The name, current address, and job title of each known person who prepared or assisted in preparing the document or recording.

*228 d) The name, current address and job title of each known person who has had access to the document or recording or who has been informed of all or any part of the contents of the document or recording.
e) The specific paragraph or paragraphs of the subpoena duces tecum that described the document or recording.
f) The alleged justification for withholding such document or recording from production.
The Louisiana State Police is being served with a subpoena duces tecum requiring it to produce at the deposition the documents described on the Schedule annexed to this Notice. The deposition will continue from day to day until completed. You are invited to attend and participate as you deem appropriate.
 Respectfully submitted,
 PHELPS, DUNBAR, MARKS,
 CLAVERIE & SIMS
 s/Jack M. Weiss
 JACK M. WEISS
 F. SCOTT KAISER
 Thirtieth Floor Texaco Center
 400 Poydras St.
 New Orleans, LA XXXXX-XXXX
 Telephone: (504) 566-1311
 SCHANEVILLE & BARINGER
 s/Dan B. Schaneville
 DAN D. SCHANEVILLE
 918 Government St., Suite 205
 Baton Rouge, LA 70802
 Telephone: (504) 383-9953
 AND FOR
 DURRETT, HARDIN, HUNTER,
 DAMERON & FRITCHIE
 ROGER FRITCHIE
 Louisiana National Bank Bldg.,
 Suite 614
 Baton Rouge, LA 70801
 Telephone: (504) 344-0501
 ATTORNEYS FOR DEFENDANTS,
 GUARANTY BROADCASTING
 CORPORATION AND
 DENNY BRAND

LOUISIANA STATE POLICE DOCUMENT SCHEDULE

A. Definitions

1. "Document" means the originals of all written, printed, typed, graphic or photographic matter, however produced or reproduced and wherever located, including, but not limited to, correspondence, telegrams, telexes, other written communications, contracts, agreements, notes, memoranda, working notes and reports, blueprints, diagrams, photographs, photographic negatives, and data processing storage units (including tapes, memory cores, discs, or cards or other data compulations from which information can be obtained and translated into reasonably useable form) over which deponent, or any of its officers, agents or employees, has control or custody.
2. "Recording" includes the original, if available, or if not, any copy, reproduction or facsimile of any electronic, or other recording (video or audio) of any nature whatsoever.
3. "Law enforcement activities" shall mean surveillance, investigation, observation, interrogation, arrest, detention or any other activity relating to the investigation, apprehension or prosecution of any person or persons who violate, are reported to have violated, or are suspected of violating any federal, state, or local law.

B. Documents Subpoenaed

1. All documents and recordings referring, reflecting or relating in any way to the defamation action of Robert L. Freeman against Guaranty Broadcasting Corporation and Denny L. Brand that have been provided, shown or made available by the State Police or any of its personnel to:
a. Robert L. Freeman
b. Curtis L. Landry, Jr.
c. Michael Baer
d. Lewis Unglesby
e. Camille Gravel, Jr.
f. Ossie Brown

*229 g. Any other person or persons employed by, assigned to, or acting on behalf of or at the request of Robert L. Freeman or the office of the Lieutenant Governor of Louisiana.
2. All documents and recordings (including without limitation transcripts and interrogation recordings) referring, reflecting or relating to the interrogation of Curtis L. Landry, Jr. by federal, state, or local law enforcement personnel.
3. All documents and recordings referring, reflecting or relating to the law enforcement activities of the State Police or any other federal, state, or local law enforcement agency relating to any of the following persons:
a. Robert L. Freeman
b. Curtis L. Landry, Jr.
c. Louis George Giavasis
d. Steve Stathes
e. Lawrence "Larry" S. Frangos
f. Harry Tubbs
4. All documents and recordings referring, reflecting or relating to any written communications and oral communications of the State Police, any of its personnel, or any other federal, state or local law enforcement agency or its personnel relating to any of the following persons:
a. Robert L. Freeman
b. Curtis L. Landry, Jr.
c. Louis George Giavasis
d. Steve Stathes
e. Lawrence "Larry" S. Frangos
f. Harry Tubbs
5. All documents and recordings referring, reflecting or relating to any written or oral policies, guidelines or standards of the State Police relating to the confidentiality or secrecy of law enforcement activities or to the confidentiality or secrecy of documents and recordings relating to law enforcement activities.
6. All documents and recordings referring, reflecting or relating to any investigation, actions, or other activities of any kind, taken by Robert L. Freeman at the request of the State Police or any of its personnel, or at the request of any other federal, state or local law enforcement agency or its personnel, in order to assist in an investigation of illegal drug activities with which an employee of the State of Louisiana may have been involved or of which the State employee may have been knowledgeable.
7. All documents and recordings referring, reflecting or relating to any written or oral policies, guidelines, or standards of the State Police relating to the retention or destruction of records, documents, recordings, and/or evidence.
8. All documents and recordings referring, reflecting or relating to the Louis G. Giavasis investigation conducted by the Drug Enforcement Administration and the Bureau of Alcohol, Tobacco and Firearms.
9. All documents and recordings referring, reflecting or relating in any way to Robert L. Freeman's defamation suit against Guaranty Broadcasting Corporation and Denny L. Brand.
10. All documents and recordings referring, reflecting or relating to any allegations made by Louis George Giavasis to the State Police that the bond documents provided by Lawrence "Larry" Frangos on behalf of Condor Construction to secure the I-10 bridge painting contract in 1984 were falsified.
11. All video tapes, audio tapes, motion pictures, photographs and photographic negatives of Louis G. Giavasis, Curtis L. Landry, Jr., Robert L. Freeman, Steve Stathes, Lawrence "Larry" S. Frangos, Harry Tubbs, Curtis Primeaux, or any of them.
12. All documents and recordings referring, reflecting, or relating in any way to communications by or among federal, state and local law enforcement agencies (including, without limitation to the State Police, East Baton Rouge Parish Sheriff's Office, Drug Enforcement Administration, Bureau of Alcohol, Tobacco and Firearms, and the Federal Bureau of Investigation) concerning the investigation or surveillance of Louis G. Giavasis, Harry Tubbs, Curtis L. *230 Landry, Jr., Steve Stathes, Curtis Primeaux, or any of them.
13. All documents and recordings referring or relating in any way to Denny L. Brand, Chris McDaniel, Guaranty Broadcasting Corporation, or WAFB-TV.
14. An anonymous letter alleging in substance that a state employee connected with the office of the Lieutenant Governor was involved in unlawful drug-related activities and requesting that action be taken to investigate the employee, together with all documents and recordings referring, reflecting or relating to the anonymous letter or the disposition of that letter.
NOTES
[1] Pertinent portion of the subpoena duces tecum and schedule are attached.
[2] The only documents produced pursuant to the subpoena were a portion of the State Police Code of Conduct and a letter the State Police had received from Freeman's counsel.
[3] See Footnote 1, supra.
[4] Although we will not address each of applicants complaints individually, the opinion adequately disposes of all issues raised.