572 So.2d 280 (1990)
MARINE SHALE PROCESSORS, INC.
v.
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HOSPITALS, et al.
No. 90 CA 0575.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
*282 Nicholas F. Larocca, Jr., Lippman, Mahfouz, Martin & Larocca, Morgan City, for plaintiff/appellant.
George W. Becker, Staff Atty., New Orleans, for State of La., David Ramsey and Dr. Georgia Bryant.
Elwood C. Stevens, Jr., Kleinpeter, Schwartzberg & Stevens, Morgan City, Daniel E. Becnel, Reserve, for intervenors Glynn Patrick Price, et al.
Lloyd J. Lunceford, Baton Rouge, for Bd. of Sup'rs of LSU & AG & Mechanical College thru LSU Medical Center.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Marine Shale Processors, Inc. (MSP) commenced these proceedings with a show cause pleading styled "Motion to Perpetuate Evidence and For a Protective Order," alleging that the Louisiana Department of Health and Hospitals (DHH) conducted a study[1] involving five cases of an unusually high incidence of neuroblastoma (a rare form of childhood cancer) found in St. Mary Parish, and that the data, documents, preliminary drafts, and final report generated from the study were essential to both pending and anticipated tort litigation alleging some connection between the activities at a nearby MSP plant and the cases of neuroblastoma. MSP alleges that the data could be discarded upon dissemination of the final report and prays for a protective order to preserve the evidence, and that it be allowed to depose the custodian.[2]
DHH opposed the motion, stating that none of the items would be discarded and that the privilege found at LSA-R.S. 44:3 A(7) excludes them from discovery.[3] DHH also asserted that it was not in actual possession of the materials, and that Louisiana State University Medical Center (LSU-MC), by virtue of a contractual arrangement, had conducted the study and was in actual possession of the items sought.
The plaintiffs in one of the pending tort suits (tort plaintiffs) intervened and moved to consolidate this matter with their suit. A show cause hearing was conducted, the motion to consolidate was denied, and the trial court ruled that the inquiry would follow the procedural constraints articulated by us in Freeman v. Guaranty Broadcasting Corporation, 498 So.2d 218 (La.App. 1st Cir.1986). In Freeman we held that LSA-R.S. 44:3 requires a contradictory hearing and a "meaningful opportunity... for cross-examination and other evidentiary processes to contradict the claim of privilege." Id. at 225. We detailed a procedure for in camera inspection of the documents, for the testimony of a representative of the custodian of the documents setting forth "with specificity" the privilege asserted, and then examination by *283 the trial court to result in deletion "or withholding in toto" of any matters that come within the scope of the privilege. Id. at 226.[4]
MSP brought these proceedings pursuant to LSA-C.C.P. art. 1429, which provides the method for the perpetuation of testimony, including, most notably, that litigation be anticipated and a listing of the names of the expected adverse parties; LSA-C.C.P. art. 1430 requires that these parties be served. LSA-C.C.P. art. 1431 requires a finding by the trial court that perpetuation "may prevent a failure or delay of justice." The scheme clearly envisions use of an extraordinary discovery method where resort to normal discovery is made impossible by the absence of pending litigation. The federal courts interpreting the federal model for our article 1429, Rule 27, of the Federal Rules of Civil Procedure, have recognized that perpetuation of testimony is not a substitute for discovery, but rather is available in "special circumstances to preserve testimony which could otherwise be lost." Ash v. Cort, 512 F.2d 909, 912 (3d Cir.1975), rev'd on other grounds sub nom., Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). See also In re: Eisenberg, 654 F.2d 1107 (5th Cir.1981); Lombard's, Inc. v. Prince Manufacturing, 753 F.2d 974 (11th Cir.1985), cert. denied, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986).
Conscientiously adhering to Freeman, the trial court conducted three separate hearings, allowing LSU-MC to intervene after the second hearing. The materials were inspected in camera following the second hearing, and some information was excised. A third hearing, with LSU-MC conducting the defense, produced the testimony of the LSU-MC faculty members involved in the study and resulted in additional deletions by the trial court. MSP, LSU-MC and the tort plaintiffs all appeal the final judgment, which orders production of all documents to which no privilege has been asserted by LSU-MC and of the remaining documents as censored by the court.
We find it unnecessary to dwell upon the articles on perpetuation, i.e., LSA-C.C.P. arts. 1429-1431, and we pretermit procedural issues because our review of the record convinces us that the trial court erred in construing the privilege created by LSA-R.S. 44:3 A(7).[5]
We begin by dismissing as specious the contention that the study was not a "public health disease investigation" because neuroblastoma is not infectious and the numbers of cases and geographical area are limited. The investigation was clearly to determine whether there existed a connection between environmental conditions and a disease. The federal government specifically recognizes, in its creation of the Public Health Service and the office of the Surgeon General, that environmental impact upon human health is a matter of public concern. See 42 U.S.C. § 242b(d).[6] *284 We believe it in the public interest to construe the language in our statute sufficiently broad to embrace this form of cancer.
The language of LSA-R.S. 44:3 A(7) exempts disclosure under the Public Records Act of "[r]ecords containing the identity of a subject of a public health disease investigation ... or ... which would tend to reveal the identity of such a subject" (emphasis ours). This privilege creates a reasonable expectation of privacy on the part of participants in such a study that their identities will in no manner be disclosed to the public. In Trahan v. Larivee, 365 So.2d 294 (La.App. 3d Cir.1978), writ denied, 366 So.2d 564 (La.1979), the Third Circuit recognized that the right of privacy guaranteed by Article I, § 5, of the Louisiana Constitution (1974) prohibited disclosure of performance evaluations of public employees. The reasoning would apply a fortiori to the instance of private citizens who willingly participate in a public health study. See Plaquemines Parish Commission Council v. Delta Development Co., 472 So.2d 560, 568 (La.1985) (where the court recognized a "diminished right to privacy" in some instances involving public officers). Moreover, the statute in this instance specifically creates a privilege consonant to the right of privacy granted generally by our state constitution. In the final analysis we believe the public's right to documents is outweighed by the public's interest in having these studies performed, and that the statute appropriately compromises the former for the latter.
Mindful of these precepts, we observe that the language "would tend to reveal" is quite broad. It is in the interpretation of this language that the trial court committed error. From the case abstracts admitted into evidence we find that the specificity of the questions coupled with the small number of cases and the fact that the identity of all five was known, compels the conclusion that everything not heretofore deleted would likewise tend to reveal to which of the five cases it applied, e.g., the date of diagnosis, the age at diagnosis, the sex, the race, the religion, the family medical histories, the diagnostic information, the treatment and the vital status. A review of the blank questionnaire admitted into evidence compels the same conclusion. Both the case abstracts and the questionnaires are to be excluded in their entirety.
The handwritten notes (copies of overhead transparencies) found in the record following the judgment, insofar as they contain ratios comparing answers by the case members to those of the control group and state a percentage of each, are to be excluded. With regard to the other items ordered disclosed by the judgment (e.g., documents "D" and "E," the unreleased preliminary drafts of the study), apparently these items inspected in camera were not introduced under seal, and do not form a part of the record, so we are unable to review the judgment to this extent. To the extent that these unreleased preliminary drafts reference any information contained in the questionnares or case abstracts which we have held to be privileged, the drafts must likewise be deemed privileged. Accordingly, the decision of the trial court granting MSP partial relief is reversed. Costs of this appeal are taxed against MSP.
REVERSED AND RENDERED.
NOTES
[1] The study was conducted for DHH by the Epidemiological Department at the Louisiana State University Medical Center, following significant public concern over the five cases of neuroblastoma. A lengthy questionnaire was prepared by several members of that department and was then administered to both parents of the five cases and of thirty-two control group children. The questions chiefly focused on prenatal activities of the parents and included several private matters as to whether the mother consumed alcohol and illegal drugs during the pregnancy, as well as what forms of contraception were used prior to the pregnancy. Invasive questions regarding prior pregnancies, medical history of both parents and extended family, as well as family income, were also asked.
[2] Consistent with LSA-C.C.P. art. 1441, the documents themselves would be subject to a request for production contemporaneous to the deposition.
[3] LSA-R.S. 44:1 through 44:41 establishes the right of public access to public records. LSA-R.S. 44:3 sets forth certain exceptions to the Public Records Act, including, "[r]ecords containing the identity of a subject of a public health disease investigation or study or records which would tend to reveal the identity of such a subject." LSA-R.S. 44:3 A(7). LSA-C.C.P. art. 1422 provides in pertinent part that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...."
[4] In Freeman a threshold inquiry into relevance was necessitated by the procedural posture of the case. Freeman was essentially a defamation action brought against WAFB-TV in Baton Rouge. WAFB-TV noticed depositions and sought production from a third party custodian of the police records who in turn asserted a LSA-R.S. 44:3 privilege. The discovery in Freeman was clearly pursuant to LSA-C.C.P. art. 1422, necessitating a relevance determination. This proceeding purports to be one to perpetuate testimony pursuant to LSA-C.C.P. art. 1429.
[5] We pretermit the procedural question because the appropriate procedure under the Public Records Act, mandamus, is likewise a summary proceeding and because we can discern no improper imposition of the burden of proof resulting from the matter having been brought in this manner. We likewise pretermit the issue of indispensable parties at this juncture because our ruling on the merits results in a judgment wholly in favor of those parties. We note that this case presents a factual situation where the custodian of the records attempted to enter into a stipulation clearly against the interests of some of the parties (participants in the case study) whose interest it is expected, as custodian, to protect. Apparently LSU-MC takes the position that the tort plaintiffs have waived their privilege under LSA-R.S. 44:3 A(7). We underscore that the statute creates a privilege enuring both to the custodian and the participants. See also LSA-Const. Art. 1, § 5.
[6] We note also that the federal scheme excepts studies conducted under Title 42 from the federal public records act, 5 U.S.C. § 552. See 42 U.S.C. § 242k(l).