15 So.3d 972 (2009)
In re A MATTER UNDER INVESTIGATION.
In re A Matter Under Investigation.
Jane and John Does
v.
Charles C. Foti, Attorney General for the State of Louisiana, Eddie Jordan, District Attorney for the Parish of Orleans, Frank Minyard, Coroner for the Parish of Orleans, Rose Agnes Savoie, Cable News Network, Inc., The Times Picayune, LLC, et al.
Nos. 2007-KK-1853, 2007-KK-1870, 2008-CC-1066.
Supreme Court of Louisiana.
July 1, 2009.
*974 Fishman, Haygood, Phelps, Walmsley, Willis & Swanson, James Richard Swanson, *975 Loretta Gallaher Mince, Lance C. McCardle, New Orleans, for Applicant in 2007-KK-1853 and 2008-CC-1066.
Charles C. Foti, Jr., Attorney General, Carles H. Braud, Jr., Arthur Falls Schafer, Frederick Albert Duhy, Jr., Virginia Gerace Benoist, Burton Paul Guidry, Dana K. Jones, Emalie Anne Boyce, Assistant Attorneys General; Robert Louis Freeman, Jr., District Attorney, Michael Gerard Morales, Assistant District Attorney; Liskow & Lewis, Brian Anthony Jackson, New Orleans, Michael David Rubenstein; Gerger & Clarke, Shaun Gerard Clarke; Blue Williams, Kurt Stephen Blankenship, Mandeville; Cruel, Castaing & Lilly, Edward Joseph Castaing, Jr., New Orleans; Hailey, McNamara, Hall, Larmann & Papale, Richard Terrell Simmons, Jr., Metairie; John Edward Di Giulio; for Respondent in 2007-KK-1853.
Charles C. Foti, Jr., Attorney General, Charles H. Braud, Jr., Arthur Falls Schafer, Frederick Albert Duhy, Jr., Virginia Gerace Benoist, Burton Paul Guidry, Dana K. Jones, Emalie Anne Boyce, Assistant Attorneys General; for Applicant in 2007-KK-1870.
Robert Louis Freeman, Jr., District Attorney, Michael Gerard Morales, Assistant District Attorney; Fishman, Haygood, Phelps, Walmsley, Willis & Swanson, James Richard Swanson, Loretta Gallaher Mince, Lance C. McCardle, New Orleans; Liskow & Lewis, Brian Anthony Jackson, Michael David Rubenstein; Gerger & Clarke, Shaun Gerard Clarke, Blue Williams, Kurt Stephen Blankenship, Mandeville; Cruel, Castaing & Lilly, Edward Joseph Castaing, Jr., New Orleans; Hailey, McNamara, Hall, Larmann & Papale, Richard Terrell Simmons, Jr., Metairie; John Edward Di Giulio, Baton Rouge, for Respondent in 2007-KK-1870.
Law Offices of James E. Boren, James Edgar Boren, Baton Rouge; Bradley, Murchison, Kelly & Shea, C. William Bradley, Jr., Bradley Russell Belsome; Capitelli & Wicker, Ralph Capitelli, New Orleans; Crull, Castaing & Lilly, Edward Joseph Castaing, Jr., New Orleans; Chehardy, Sherman, Ellis, Metairie, Murray, Recile, Griffith, Stakelum & Hayes, Michael H. Ellis, Metairie; Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Pauline Fransen Hardin, Virginia W. Gundlach, Stephen J. Haedicke, New Orleans; Shows, Cali, Berthelot & Walsh, Baton Rouge, Edmond Wade Shows; King, Krebs & Jurgens, Lindsay Alexis Larson, III, New Orleans; Law Offices of Michael J. Samanie, Houma, Stephen Scott Stipelcovich, Michael J. Samanie, Houma; Busch & Myers, Mark Christopher Carver, New Orleans; Stanley, Reuter, Ross, Thornton, & Alford, Vicki Ann Elmer, New Orleans; Flanagan Partners, Thomas More Flanagan, New Orleans; Preston Law Firm, Paul Gregory Preston, New Orleans; Sedgwick, Detert, Moran & Arnold, Wayne B. Mason; Clayton & Fruge, Antonio Marcell Clayton; Hailey, McNamara, Hall, Larmann & Papale, Richard Terrell Simmons, Jr., Metairie; Liskow & Lewis, Brian Anthony Jackson, New Orleans; Gerger & Clarke, Shaun Gerard Clarke; Garrison, Yount, Forte & Mulcahy, Scott Parker Yount; Gulf Law Group, Pamela Joy Lormand; Robert C. Jenkins, Jr. & Associates, Robert Charles Jenkins, Jr.; Stephen David London; Clarence Roby, Jr., New Orleans; David Frederick Craig, Jr.; John Edward Di Giulio, Baton Rouge; Ralph Shipley Whalen, Jr.; Bruce Gerard Whittaker; Charles C. Foti, Jr., Attorney General, Charles H. Braud, Jr., Mary Ellen Hunley, Richard Lee McGimsey, Dana K. Jones, Emalie Anne Boyce, Assistant Attorneys General; Robert Lewis Freeman, Jr., District Attorney; Meadows, Collier, Reed, Cousins & Blau, Charles W. Blau, Pro Hac Vice, for Respondent in 2008-CC-1066.
*976 KIMBALL, Chief Justice.[*]
The matters of 2007-KK-1853 and 2007-KK-1870 involve the issue of whether the Orleans Parish Criminal District Court properly ordered the return of documents and copies thereof that were produced pursuant to a subpoena duces tecum pursuant to La. R.S. 15:41. For the reasons that follow, we find that because documents and copies of documents produced pursuant to a subpoena duces tecum are not "property seized" within the meaning of La. R.S. 15:41, the district court was without authority to order their return under the provisions of that statute.
The matter of 2008-CC-1066 involves the issue of whether the Attorney General's investigative file into the circumstances surrounding several deaths at Tenet Health System Memorial Health Center following Hurricane Katrina is required to be disclosed at this time under the Public Records Act. We find that La. R.S. 44:3(A)(1) exempts from the required disclosure under the Public Records Act records held by the offices of the Attorney General and the District Attorney that pertain to any criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or otherwise settled. After discussing the relevant inquiry to determine whether criminal litigation can be reasonably anticipated, we find the record in this case is insufficient to allow us to determine whether criminal litigation can be reasonably anticipated as provided in La. R.S. 44:3(A)(1). Accordingly, we remand this case to the trial court for it to conduct a contradictory hearing and determine whether criminal litigation can be reasonably anticipated in this case.

Facts and Procedural History
Beginning in September 2005, after Hurricane Katrina struck the Louisiana coast, then-Louisiana Attorney General ("AG") Charles Foti initiated several investigations into the conditions surrounding several deaths that occurred at hurricane-impacted healthcare facilities. During this period and pursuant to the requirements of law, Life Care Hospitals of New Orleans, LLC ("LifeCare") self-reported the deaths of thirty-four men and women who died at Tenet Health System Memorial Medical Center, Inc. ("Tenet-Memorial") in the immediate aftermath of Hurricane Katrina.[1] AG Foti thereafter began an investigation into the Tenet-Memorial deaths.
During the course of his investigation, AG Foti served La.C.Cr.P. art. 66 subpoenas and subpoenas duces tecum on numerous witnesses who were working at Memorial in the days following Hurricane Katrina, their corporate employers and various others. The AG also seized other documents and evidence through search warrants, and some documents were provided voluntarily by LifeCare and Tenet-Memorial. In sum, the AG's investigative file ultimately contained several thousand pages of documents, including transcripts of witness interviews, documents obtained from Tenet-Memorial and LifeCare, other evidentiary records, information produced during the investigation, summary reports prepared by the AG, correspondence among the investigatory personnel, subpoenas and search warrants, expert reports, *977 toxicology reports, police logs, photographs, and copies of press coverage. The AG's investigation continued into 2006, and ultimately culminated in the arrest of three medical professionals on July 17, 2006.
Following the arrests, AG Foti gave a complete copy of his investigative file to the Orleans Parish District Attorney's Office ("DA"). The DA subsequently impaneled a special grand jury to consider the matter.[2] Two of the arrested healthcare professionals were then granted immunity in exchange for their testimony. On July 24, 2007, the special grand jury returned a "no true bill," thereby refusing to indict the remaining healthcare professional. The DA then returned the copy of the AG's investigative file to the AG.
Following the occurrences outlined above, two proceedings concerning the AG's investigative file were initiated.

The Orleans Parish Criminal District Court Action[3]
On August 6, 2007, Tenet-Memorial filed a motion in Orleans Parish Criminal District Court for return of seized property pursuant to La. R.S. 15:41. In its motion, Tenet-Memorial sought to purge its documents from the AG's investigative file by seeking the return of all property, including documents and any copies thereof, produced to the AG pursuant to subpoenas duces tecum and seized by the AG pursuant to a search warrant. The Cable News Network ("CNN") attempted to intervene, arguing that the return of copies would violate the Public Records Act, La. R.S. 44:1, et seq. The Orleans Parish Criminal District Court trial judge held a hearing on Tenet-Memorial's motion on August 16, 2007, and thereafter entered the following order:
IT IS ORDERED that Hon. Charles C. Foti, Attorney General of the State of Louisiana and Hon. Eddie Jordan, District Attorney for the Parish of Orleans return the originals and all copies of materials produced as a result of a subpoena signed by this court, to the entities or organizations that produced material to the Attorney General's office or the District Attorney's office in this matter.

*978 IT IS FURTHER ORDERED that the Attorney General and the District Attorney shall have 30 days to take writs on this order. That period ends on September 15, 2007. Unless a stay of this order is granted by an Appellate Court, the Attorney General and the District Attorney shall return the property to any entity or organization on or before September 16, 2007. In the interim, the Attorney General, District Attorney and any other governmental entity of the State of Louisiana in possession of such material shall not release any original documents, records, other property, or copies thereof that were produced as a result of a subpoena signed by this court in this matter.
CNN sought supervisory writs and a stay from the court of appeal on September 7, 2007. That same day, the Louisiana Court of Appeal, Fourth Circuit, denied both the writ and the stay, finding: "Relator has no standing to seek supervisory review of the trial court's ruling." On September 12, 2007, the AG filed his own application seeking review by the court of appeal. Although the court found that the AG had the requisite standing, it denied the AG's writ on the following day.
Thereafter, both CNN and the AG sought writs of certiorari from this court. We stayed the order of the trial court, granted certiorari, and consolidated the matters. In re: A Matter Under Investigation, 07-1853, 07-1870 (La.6/20/08), 984 So.2d 4.

The 19th Judicial District Court for the Parish of East Baton Rouge Action
Following the return of the "no true bill" by the grand jury, CNN and the Times-Picayune, LLC ("Times-Picayune") joined by others, submitted numerous public records requests to AG Foti requesting production of the investigative file. In response, the AG filed suit in the 19th Judicial District Court for the Parish of East Baton Rouge, seeking a declaratory judgment clarifying what portions, if any, of his investigative file were subject to release under the Louisiana Public Records Act. On the same day, several unidentified individuals alleging they are healthcare professionals who worked at Memorial Medical Center during and after Hurricane Katrina and appearing under the names of John and Jane Doe also filed a petition for declaratory judgment in the 19th Judicial District Court for the Parish of East Baton Rouge. These petitioners sought a declaration that the investigative files are not subject to disclosure under the Public Records Act. The Does named as defendants the Attorney General, the District Attorney of Orleans Parish, the Orleans Parish Coroner, Rose Agnes Savoie, CNN and the Times-Picayune, and "all other persons or entities who have made requests under the Louisiana Public Records Act." In response, CNN and the Times-Picayune filed a cross-claim and motion for writ of mandamus and preliminary injunction seeking to compel the release of the investigative file. Subsequently, several interested parties were allowed to intervene in the suit. After the filing of the cross-claim, all parties agreed to proceed only in the Does' case.
Several days after the Orleans Parish Criminal District Court rendered its order, the judge in the 19th Judicial District Court commenced hearings in the Does' action. The AG filed under seal a complete copy of his investigative file, including an index, in the trial court.[4] After the hearings were completed, the trial court rendered judgment on September 19, 2007, finding that the majority of the investigative file was a public record, but *979 also identifying specific portions that were not subject to public release.[5] The trial court denied the motion for writ of mandamus and preliminary injunction. Finally, the trial court stayed its order to allow the litigants to seek appellate review.
The Does and various intervenors, including LifeCare, thereafter applied to the Court of Appeal, First Circuit, for supervisory writs. On April 18, 2008, in a 4-3 decision, a seven-judge panel of the court of appeal granted the writ applications in part and denied them in part, giving identical reasons for each application. The court of appeal denied the writs as to the trial court's findings of jurisdiction and standing, and as to its order denying the motions for writ of mandamus and preliminary injunction. It granted the writs with respect to all other provisions of the trial court's order and reversed. In reversing the remaining orders of the trial court, the court of appeal found La. R.S. 44:3(A), which exempts from the Public Records Act the disclosure of records or information held by the offices of the Attorney General, district attorneys, public health investigators and others when those records and information pertain to pending or reasonably anticipated criminal litigation until such litigation has been finally adjudicated or otherwise settled, applies to the file at issue. The court of appeal concluded materials in the investigative file were compiled, created and prepared to bring homicide charges against persons involved in the treatment of patients at Tenet-Memorial following Hurricane Katrina. The court of appeal found that because there is no prescriptive period for homicide charges, criminal litigation was not finally adjudicated by the grand jury's return of a no true bill. Accordingly, the court concluded, the documents and records at issue are exempted from disclosure under the Public Records Act by La. R.S. 44:3(A). Furthermore, the court of appeal found the investigative file at issue was prepared in connection with, and in preparation for, the eventual presentation to a grand jury. Thus, it concluded, its contents are shielded from disclosure by persons present at the grand jury meeting or having confidential access to information concerning the grand jury proceeding pursuant to La.C.Cr.P. art. 434.[6]
*980 CNN and the Times-Picayune subsequently applied to this court for writs of certiorari, which we granted on June 20, 2008. This matter was consolidated with the writs arising out of the Orleans Parish Criminal District Court action. Does v. Foti, 08-1066 (La.6/20/08), 984 So.2d 5.

Discussion

The Orleans Parish Criminal District Court Action (07-KK-1853 and 07-KK-1870)
In brief, both CNN and the AG argue that any documents obtained from Tenet-Memorial plainly fall within the definition of a public record under the Public Records Act, and, therefore, the AG has a legal duty to maintain copies of all such documents in his file. They further argue this duty overcomes Tenet-Memorial's right to have said copies returned.[7] CNN and the AG also argue that a motion filed pursuant to La. R.S. 15:41 is by nature a civil action that can only be brought in a court of civil jurisdiction, and that, even if a motion for return of seized property can be brought in a criminal court, La. R.S. 15:41 is applicable only to property seized pursuant to a search warrant and specifically inapplicable to documents produced pursuant to a subpoena duces tecum. In opposition, Tenet-Memorial asserts that CNN lacks standing to intervene in this action, La. R.S. 15:41 is a criminal motion that can only be brought in a court of criminal jurisdiction, and La. R.S. 15:41 applies to both search warrants and subpoenas duces tecum.[8]
We must first consider whether CNN has standing to intervene in Tenet-Memorial's motion for return of property. Tenet-Memorial asserts that CNN was neither a party to the motion for return of property, nor was it made a subject of the court's order. In addition, Tenet-Memorial notes that La. R.S. 15:41 does not contemplate actions by third parties other than those who claim an ownership interest in the seized property. Consequently, *981 Tenet-Memorial concludes that CNN lacks standing to challenge the trial court's order. CNN counters that it has an interest in the motion for return of property because the records at issue qualify as public records and therefore implicate the public's rights under the Public Records Act.
When addressing a litigant's standing, we have found that the "predicate requirement of standing is satisfied if it can be said that the [litigant] has an interest at stake in litigation which can be legally protected." In re: Melancon, 05-1702, p. 9 (La.7/10/06), 935 So.2d 661, 668. Conversely, a litigant who is not asserting a substantial existing legal right is without standing in court. Melancon, 05-1702 at p. 8, 935 So.2d at 667. In addition, that a party has the legal capacity to appear in court does not alone define standing; rather, standing is gauged also by the specific statutory or constitutional claims that the party presents and the party's relationship to those claims. Melancon, 05-1702 at p. 9, 935 So.2d at 668. The standing inquiry requires careful examination of whether a particular litigant is entitled to an adjudication of the particular claims it has asserted. Melancon, 05-1702 at p. 10, 935 So.2d at 668 (citing Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)).
In this case, La. R.S. 44:35 provides for the enforcement of the public's rights under the Public Records Act:
A. Any person who has been denied the right to inspect or copy a record under the provisions of this Chapter, either by a final determination of the custodian or by the passage of five days... from the date of his request without receiving a final determination in writing by the custodian, may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney's fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located.
La. R.S. 44:35. La. R.S. 44:35, by its plain language, provides that "any person who has been denied the right to inspect or copy a record" by the action of the "custodian" of those records a cause of action against the "custodian." See Vourvoulias v. Movassaghi, 04-0262, p. 6 (La.App. 1 Cir. 2/11/05), 906 So.2d 461, 465 ("Only the person who requests to inspect or copy a public record and is denied that right belongs to the class of persons to whom the law grants the cause of action."). Tenet-Memorial is not the custodian of the public records at issue in these consolidated cases, and is therefore not capable of denying CNN its right to inspect or copy a public record by filing a motion for return of its property. La. R.S. 44:31 and 44:36. Rather, the custodian of the public records at issue in these proceedings is the AG. La. R.S. 44:36. CNN's right of action under the Public Records Act is limited to actions against the custodian of the public records. La. R.S. 44:35. Consequently, CNN's action for enforcement of its rights under the Public Records Act is not by way of intervention against Tenet-Memorial in a motion for return of property filed in an Orleans Parish Criminal District Court because CNN has no substantial legal right in that motion. Rather, CNN's action for enforcement of its rights under the Public Records Act is by way of suit against the AG, in the district court for the parish in which the office of the custodian is located. La. R.S. 44:35. In fact, in these consolidated cases, CNN exercised its rights under the Public Records Act when it filed suit against the AG in the District Court for the Parish of East Baton Rouge. For these reasons, CNN lacks statutory authority and is thus without standing to also exercise that right by intervening in an Orleans Parish Criminal *982 District Court action against an entity that is not the custodian of the public records.
CNN asserts, however, that it has a right, not only to access the public records, but also to ensure that they are not compromised by the Orleans Parish District Court's order mandating the return of certain documents and copies thereof. The intent of CNN's intervention in this case is thus not to inspect the public records, but rather to maintain what it considers to be public records. However, when the facts alleged provide a remedy to someone, but the litigant who seeks relief is not the person in whose favor the law extends the remedy, that litigant is without standing. Melancon, 05-1702 at p. 10, 935 So.2d at 668. In this case, the right and responsibility to maintain the public records is within the exclusive statutory authority of the AG. La. R.S. 44:36. Consequently, CNN cannot gain standing by claiming that it wishes to maintain the integrity of the public records on behalf of the AG.
In addition, when ruling on standing, it is both appropriate and necessary to look to the substantive issues to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated. Chicago Tribune Co. v. Mauffray, 08-522, pp. 7-8 (La.App. 3 Cir. 11/5/08), 996 So.2d 1273, 1279 (citing Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). Here, CNN asserts a status that necessarily belongs to the AG: that of custodian of the alleged public records at issue in this case. However, CNN is without statutory authority to take up this mantle on behalf of the AG. As such, CNN also asserts that it has status as a person who has been denied the right to inspect or copy a public record. Nonetheless, CNN has asserted this status in an action for return of property. The claim sought to be adjudicated in this proceeding is that of the return of property. This claim has no logical nexus to CNN's asserted status, which is that of a party who has been denied the right to inspect or copy a public record. In order to be entitled to maintain its action, CNN must have had a direct and present interest in the motion for return of property; it is insufficient that CNN had a remote or indirect interest therein. Melancon, 05-1702 at p. 8 n. 5, 935 So.2d at 667 n. 5 (citing 26 C.J.S.  125 (2001), pp. 241-15).
For these reasons, we find that CNN lacked standing to intervene in the Orleans Parish Criminal District Court proceeding, and we hereby dismiss CNN from that portion of this case.
Having determined that CNN lacked standing to intervene in Tenet-Memorial's motion for return of property, we now address whether the Orleans Parish Criminal District Court possessed the requisite jurisdiction to entertain that motion. The AG asserts that a motion for return of property under La. R.S. 15:41 is a civil action over which the Criminal District Court for the Parish of Orleans had no jurisdiction. Tenet-Memorial, in turn, argues that only the Criminal District Court had jurisdiction over its motion for return of property, noting that it would be untenable for a party to petition the Orleans Civil District Court for relief from the orders of the Criminal District Court.
La. R.S. 15:41, entitled "Disposition of property seized in connection with criminal proceedings," is found in Title 15 of the Revised Statutes governing "Criminal Procedure" within Code Title IV, entitled "Search Warrants". La. R.S. 15:41(B) provides for the return of property seized in connection with a criminal proceeding so long as that property (1) "is not to be used as evidence or is no longer needed as evidence" and (2) no statute declares the property to be contraband. La. R.S. 15:41.
The rules of statutory construction provide that when a law is clear and unambiguous and its application will not *983 lead to absurd consequences, it must be applied as written. La. C.C. art. 9. Furthermore, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
We find nothing within the plain language of La. R.S. 15:41 that requires Tenet-Memorial's motion to be filed in a civil court. To the contrary, the fact that this article is found within the Revised Statutes governing criminal procedure strongly suggests that it applies to courts exercising criminal jurisdiction. In addition, logical considerations suggest such a finding. A civil court is an unlikely venue for determining the status of a criminal matter pending in another court or whether the evidence to be used therein is still needed.[9] Such action by the Orleans Civil District Court would put it at odds with the exclusive jurisdiction of the Orleans Criminal District Court. It would be bizarre indeed to require the clerk of the Orleans Criminal District Court to appear before the Orleans Civil District Court regarding orders issued by the Orleans Criminal District Court.
The AG cites three appellate cases in support of his conclusion that a La. R.S. 15:41 motion for return of property is a civil action: In the Interest of C.C., 03-762, p. 7 (La.App. 5 Cir. 12/9/03), 864 So.2d 663, 667; State v. Baynes, 96-0292, p. 6 n. 2 (La.App. 4 Cir. 7/31/96), 678 So.2d 959, 962 n. 2 (citing State v. Lamb, 26,257 (La.App. 2 Cir. 10/26/94); 645 So.2d 791); and State v. Mart, 96-1584, p. 5 (La.App. 1 Cir. 6/20/97), 697 So.2d 1055, 1058. In State v. Lamb, the police seized a significant amount of non-contraband cash from defendant Lamb incidental to his arrest, which he thereafter sought to have returned to him. Lamb, 26,257 at p. 1, 645 So.2d at 792. The State argued that Lamb's failure to appeal a prior judgment denying his previous motion for return of his property prevented him from now seeking its return. Lamb, 26,257 at p. 5, 645 So.2d at 794. The court of appeal stated, without citation, that "the instant matter is treated as civil by this court and is governed by the Code of Civil Procedure." Id. Finding that the delay for taking his appeal had not started to run under the Code of Civil Procedure, the court of appeal allowed Lamb to contest the prior judgment denying his previous motion for return of property. Lamb, 26,257 at p. 7, 645 So.2d at 795. The appellate court's assertion in Lamb constituted dicta, and was unsupported by law.
The Baynes court, also in dicta, made a similar finding, noting in a footnote that "an action for return of property, even if governed in part by criminal statutes, is by nature a civil action." Baynes, 96-0292 at p. 6 n. 2, 678 So.2d at 962 n. 2. In support of this contention, the court of appeal cited State v. Lamb as its sole authority. Similarly, the Mart court, in arriving at an identical finding, cited only State v. Baynes as authority for its conclusion. Finally, in In the Interest of C.C., the appellate court, in determining that a motion seeking a return of property should be brought in a separate civil proceeding, cited this court's decision in State v. Paster, 373 So.2d 170 (La.1979). However, a review of the Paster decision reveals that it did not address La. R.S. 15:41 at all, but rather found that a defendant's liability for towing and storage fees was a civil action *984 pursuant to La.C.Cr.P art. 886 (1979) (nonpayment of fines and costs in criminal matters may be enforced in the same manner as money judgments in civil cases). Paster, 373 So.2d at 175-76.
We find none of the above-cited cases probative or even helpful in resolving the issues presently before us. Rather, the above-cited cases referenced no governing, applicable authority for their interpretations of La. R.S. 15:41, and several relied solely on the unsubstantiated findings of their fellow appellate courts. Consequently, we question their correctness, and, to the extent they conflict with our decision today, they are overruled.
Finally, we note that La. R.S. 15:41 must be read in light of La.C.Cr.P. art. 167, which provides as follows:
When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.
La.C.Cr.P. art. 167. The plain language of this article vests the judge presiding over a proceeding with the jurisdiction to order the return of property seized under a search warrant in connection with that proceeding. Because property seized pursuant to a search warrant is almost exclusively done so in connection with criminal proceedings and this provision is found in the Code of Criminal Procedure, we interpret this statute as allowing a criminal court judge to exercise the jurisdiction to order the return of property seized pursuant to a search warrant.
Given our mandate to read laws on the same subject matter in reference to each other under La. C.C. art. 13, and for the reasons set forth above, we find that a motion for return of property filed pursuant to La. R.S. 15:41 is part and parcel of a criminal proceeding, and is thus included within the jurisdiction of the criminal court presiding over or having presided over the criminal proceeding.
Having concluded that the Criminal District Court is a proper jurisdiction in which to bring this La. R.S. 15:41 motion, we now address the scope of such a motion. As noted above, La. R.S. 15:41, entitled "Disposition of property seized in connection with criminal proceedings," is found in Title 15 of the Revised Statutes governing "Criminal Procedure." Within Title 15, this statute is found in Chapter 1, entitled "Code of Criminal Procedure Ancillaries," and, within that chapter, is found within Code Title IV, entitled "Search Warrants." Although the text of La. R.S. 15:41 does not refer by name to search warrants or the fruits thereof (i.e., property seized pursuant to a search warrant), it consistently and exclusively refers to "property seized" in connection with a criminal prosecution. As such, we must discern whether the copies in the possession of the AG constitute "property seized" in connection with a criminal prosecution as contemplated by La. R.S. 15:41.
As an initial matter, we do not address the status of any original documents, or copies thereof, seized by the AG pursuant to a search warrant. We find that we need not reach this issue given the limited language of the trial court's order. The trial court's order demanded the return of "the originals and all copies of materials produced as a result of a subpoena signed by this court, to the entities or organizations that produced material to the [AG]'s office or the [DA]'s office in this matter." (Emphasis added.) Later in its order, the trial court ordered the AG and the DA "not [to] release any original documents, records, other property, or copies thereof that were produced as a result of a subpoena signed by this court in this matter." (Emphasis added.) Thus, it appears that *985 the trial court's order was specifically limited to a return of the originals and copies of documents produced as a result of a subpoena only, and did not address or order the return of the originals or the copies of documents seized pursuant to a search warrant. Therefore, we need not comment on whether a trial court, under the auspices of La. R.S. 15:41, may order the return of documents or copies of documents seized pursuant to a search warrant.
Having disposed of this initial issue, we now turn to whether documents produced pursuant to a subpoena duces tecum, and copies thereof, constitute "property seized" within the meaning of La. R.S. 15:41. This analysis necessarily requires an inquiry into the constitutional origin of the subpoena duces tecum. At the outset, we note that there has been significant confusion regarding the precise relationship between subpoenas duces tecum and what have been viewed as traditional searches and seizures under the Fourth Amendment. The United States Supreme Court noted in its seminal case on the matter, which involved the production of a corporation's documents in response to a subpoena duces tecum:
The primary source of misconception concerning the Fourth Amendment's function lies perhaps in the identification of cases involving so-called `figurative' or 'constructive' search with cases of actual search and seizure. Only in this analogical sense can any question related to search and seizure be thought to arise in situations which, like the present ones, involve only the validity of authorized judicial orders.
The confusion is due in part to the fact that this is the very kind of situation in which the decisions have moved with variant direction, although without actual conflict when all of the facts in each case are taken into account. Notwithstanding this, emphasis and tone at times are highly contrasting, with consequent overtones of doubt and confusion for validity of the statute or its application. The subject matter perhaps too often has been generative of heat rather than light, for the border along which the cases lie is one where government intrudes upon different areas of privacy and the history of such intrusions has brought forth some of the stoutest and most effective instances of resistance to excess of governmental authority.
Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 202, 66 S.Ct. 494, 502, 90 L.Ed. 614 (1946).
Notwithstanding this confusion, the Court plainly concluded that the "short answer" to Fourth Amendment objections regarding subpoenas duces tecum is that documents sought pursuant to a valid subpoena duces tecum, like those sought in the afore-quoted Oklahoma Press case, "present no question of actual search and seizure...." Oklahoma Press, 327 U.S. at 195, 66 S.Ct. at 498. See also United States v. Wallace & Tiernan Co., Inc., 336 U.S. 793, 796-97, 69 S.Ct. 824, 826, 93 L.Ed. 1042 (1949) ("Thus it cannot be thought that the form of the subpoena or the method of its enforcement constitutes even a `constructive' search or seizure barred as `unreasonable' by the Fourth Amendment."); United States v. Dionisio, 410 U.S. 1, 9, 17, 93 S.Ct. 764, 769, 773, 35 L.Ed.2d 67 (1973) ("It is clear that a subpoena to appear before a grand jury is not a `seizure' in the Fourth Amendment sense, even though that summons may be inconvenient or burdensome," and also noting that "the initial directive to appear is as intrusive if the witness is called simply to testify as it is if he is summoned to produce physical evidence."); United States v. Mara, 410 U.S. 19, 21, 93 S.Ct. 774, 775, 35 L.Ed.2d 99 (1973) ("a grand jury subpoena is not a `seizure' within the meaning of the Fourth *986 Amendment."); In re Grand Jury Proceedings, 115 F.3d 1240, 1244 (1997) (finding that a subpoena duces tecum is not a search or seizure, the litigant's argument to the contrary conflated a grand jury subpoena with a magistrate judge's search warrant, and the instruments are different in nature and issued by different authorities). Rather, the Court opined, the only question raised by such subpoenas regards whether they have been "validly made." Oklahoma Press, 327 U.S. at 195, 66 S.Ct. at 498.[10]
In distinguishing a valid subpoena duces tecum from a search and seizure, the Court noted that it is not necessary, as in the case of a search warrant, that a specific charge or complaint of violation of the law be pending or that the order be made pursuant to one. Oklahoma Press, 327 U.S. at 208-09, 66 S.Ct. at 505. Rather, it is enough that the investigation is lawfully authorized. Id. In addition, no officer or other person attempts to enter the premises of a person or corporation receiving a subpoena duces tecum, nor does any person attempt to search or seize their person or their records without their assent, other than pursuant to orders of a court authorized by law and made after adequate opportunity to present objections. Oklahoma Press, 327 U.S. at 195, 66 S.Ct. at 498.
It is this opportunity for objection and judicial intervention, in fact, that differentiates a subpoena duces tecum from a search or seizure. Persons from whom documents are subpoenaed are not required to submit to the subpoena's demand if it is in any way unreasonable or overreaches its authority. Oklahoma Press, 327 U.S. at 217, 66 S.Ct. at 510. See also Donovan v. Lone Steer, Inc., 464 U.S. 408, 412, 104 S.Ct. 769, 772, 78 L.Ed.2d 567 (1984) (affirming Oklahoma Press, and finding that a subpoena is "scarcely the sort of governmental act which is forbidden by the Fourth Amendment." The subpoena "itself did not authorize either entry or inspection of appellee's premises; it merely directed appellee to produce relevant... records at appellants' regional office...."). Rather, to such an overbroad or unreasonable subpoena, such persons may make every appropriate defense supported by every safeguard of judicial restraint. Oklahoma Press, 327 U.S. at 217, 66 S.Ct. at 510; Donovan, 464 U.S. at 415, 104 S.Ct. at 773 (persons receiving subpoenas are provided protection and in no way left defenseless because they can question the reasonableness of the subpoena before the court before suffering any penalties for refusing to comply with it); Doe v. United States, 253 F.3d 256, 264 (6th Cir.2001) (noting that a primary distinction between subpoenas and searches and seizures is that, unlike the immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant, the reasonableness of a subpoena's command can *987 be contested in court before being enforced.).[11]
This judicial intervention also alters the necessary burden for receiving a subpoena duces tecum. The probable cause requirement that is literally applicable in the case of search warrants is satisfied by the court's determination that the investigation is authorized, the documents sought are relevant to the inquiry, and the request for production is reasonable. Oklahoma Press, 327 U.S. at 209, 66 S.Ct. at 506; Doe, 253 F.3d at 264 ("immediacy and intrusiveness associated with a search are not present" in a subpoena duces tecum and thus the heightened requirement of probable cause is inapplicable); Becker v. Kroll, 494 F.3d 904, 916 (10th Cir.2007) (citing United States v. Bailey (in re Subpoena Duces Tecum), 228 F.3d 341, 347-49 (4th Cir.2000) for the proposition that probable cause is required for warrants but not for subpoenas because warrants are immediate and intrusive, whereas subpoenaed parties have an opportunity to challenge a subpoena before complying with it). Moreover, rather than a literal requirement to describe the place to be searched and the things to be seized, as is actually required for search warrants, a subpoena duces tecum need merely specify adequately, but not excessively, which documents must be produced for the purposes of the relevant inquiry. La.C.Cr.P. art. 732; Oklahoma Press, 327 U.S. at 209, 66 S.Ct. at 506. Therefore, while both subpoenas duces tecum and search warrants implicate a basic compromise between securing the public interests and guarding the private ones, the interests implicated by the use of a subpoena duces tecum "are not identical with those protected against invasion by actual search and seizure, nor are the threatened abuses the same." Oklahoma Press, 327 U.S. at 213, 66 S.Ct. at 508.
While this court has yet to directly address the difference between subpoenas duces tecum and search warrants, we have recently spoken on the issue in a tangential manner. In State of Louisiana v. Lee, 05-2098, p. 17 (La.1/16/08), 976 So.2d 109, 123-24, this court addressed whether DNA collection could be compelled by use of a La.C.Cr.P. art. 66 AG's/DA's investigative subpoena duces tecum, and, in so doing, found that such a collection constituted a search under the Fourth Amendment requiring a valid search warrant supported by probable cause. In that case, the State asserted that a subpoena duces tecum issued by a judge pursuant to La.C.Cr.P. art. 66 is the "functional equivalent" of a search warrant. Lee, 05-2098 at p. 18, 976 So.2d at 124. We rejected this contention, noting that a subpoena duces tecum need not be supported by probable cause, as a search warrant must. Lee, 05-2098 at pp. 18-19, 976 So.2d at 124-25. We also found that, unlike a person served with a search warrant, a person receiving a subpoena duces tecum "may at any time seek protection by the court from hardship or abuse of process by moving to modify or quash the subpoena or order." Lee, 05-2098 at p. 18, 976 So.2d at 124 n. 9. Our differentiation *988 of warrants and subpoenas duces tecum and our rejection of the State's argument that such subpoenas are the "functional equivalent" of warrants makes it clear that there is a concrete difference between the two and that the Fourth Amendment does not equate subpoenas duces tecum with seizures.
For these reasons, we find that documents and other things produced pursuant to a subpoena duces tecum are not "property seized" within the meaning of La. R.S. 15:41.[12] Therefore, because valid subpoenas duces tecum are not seizures, and documents produced pursuant to such subpoenas are not "property seized" within the meaning of La. R.S. 15:41, we find that the trial court was without authority under La. R.S. 15:41 to order the AG to return the documents, or their copies, produced by Tenet-Memorial pursuant to the AG's subpoenas duces tecum. Consequently, the order of the trial court is reversed and set aside, and the case is remanded to the trial court for further proceedings consistent with this opinion. We note that we have determined only that La. R.S. 15:41 does not apply to documents produced pursuant to a subpoena duces tecum. While the legislature has not provided a specific procedure for the return of property produced pursuant to a subpoena duces tecum, the parties are not necessarily without recourse, and the trial court on remand may fashion a reasonable resolution if it so desires following the finality of the proceedings, including the expiration of all applicable appellate delays, initiated in the Nineteenth Judicial District Court for the Parish of East Baton Rouge (08-CC-1066). See La.C.Cr.P. art. 3 ("Where no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.").

The 19th Judicial District Court for the Parish of East Baton Rouge Action (08-CC-1066)
As discussed above, this action arose following several public records requests for the AG's investigative file that were submitted after the grand jury returned a "no true bill" in the underlying matter. In the action at issue, CNN and the Times Picayune assert they are entitled to all documents relating to the investigation of the deaths at Tenet-Memorial that occurred in the aftermath of Hurricane Katrina because those records are *989 public records under the Public Records Act. The Does respond that as a matter of law, the investigative file is not subject to disclosure under the Public Records Act because the file pertains to reasonably anticipated criminal litigation that has not been finally adjudicated or otherwise settled and is therefore exempt from the Act by La. R.S. 44:3. We must begin, then, by determining whether the investigative file constitutes a public record required to be disclosed upon request pursuant to the Public Records Act.
Article XII, sec. 3 of the Louisiana Constitution provides that "no person shall be denied the right to ... examine public documents, except in cases established by law." The Louisiana Public Records Law is codified at La. R.S. 44:1, et seq. Pursuant to this law, any person of the age of majority may inspect, copy or reproduce, and any person may obtain a copy or a reproduction of, any public record "except as otherwise provided in this Chapter or as otherwise specifically provided by law." La. R.S. 44:31. We have stated:
The right of the public to have access to the public records is a fundamental right, and is guaranteed by the constitution. La. Const. art. 12,  3. The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Id. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see. To allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights.
Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979, p. 4 (La.7/1/97), 696 So.2d 562, 564 (quoting Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984)) (emphasis in original).
"Public records" are defined in La. R.S. 44:1(A)(2)(a) as:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, ... except as otherwise provided in this Chapter or the Constitution of Louisiana.
Thus, under this broad definition, the investigative file at issue is a public record that any person may obtain a copy of unless the Public Records Act or another law specifically provides otherwise. La. R.S. 44:31.
In this court, the Does, various intervenors, and the AG contend that the Public Records Act contains a specific exemption for the investigative file. La. R.S. 44:3 provides in part:
A. Nothing in this Chapter shall be construed to require disclosures of records, or the information contained therein, held by the offices of the attorney general, district attorneys, sheriffs, *990 police departments, Department of Public Safety and Corrections, marshals, investigators, public health investigators, correctional agencies, communications districts, intelligence agencies, or publicly owned water districts of the state, which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled....[13]
This court has recognized the provisions of La. R.S. 44:3 as containing a statutory exception to the Public Records Act. Bester v. Louisiana Supreme Court Cmte. on Bar Admissions, 00-1360, p. 8 (La.2/21/01), 779 So.2d 715, 719; Capital City Press, 96-1979 at p. 5, n. 2, 696 So.2d at 565 n. 2. We have also recognized, however, that this exception is temporary, denying access only until pending or reasonably anticipated criminal litigation has been finally adjudicated or otherwise settled. Landis v. Moreau, 00-1157, p. 5 (La.2/21/01), 779 So.2d 691, 695. Nevertheless, it applies to prevent the required public disclosure of investigative records as long as criminal litigation is pending or reasonably anticipated until that litigation has been finally adjudicated or otherwise settled.
The parties disagree as to the applicability of La. R.S. 44:3 to the facts of this case. As an initial matter, CNN asserts that only the Does and intervenors, and not the AG, have asserted this exemption and, therefore, it cannot be applied in this case. Part of the difficulty in addressing this issue stems from the fact that the investigating AG who participated in the trial court proceedings is no longer serving in that capacity. The current AG has clearly stated his intention to invoke the exemption, and argues in this court that the exemption is necessary to maintain the integrity of the file and to avoid compromising any future litigation arising from the investigation. The current AG further contends the case remains officially open. In documents filed in the trial court, the former AG requested a determination of what public records were subject to disclosure under the law.
Whether the investigative file is subject to disclosure implicates the provisions of La. R.S. 44:3. That statute plainly provides that disclosure of records pertaining to reasonably anticipated criminal litigation is not required under the Public Records Act until such litigation has been finally adjudicated or otherwise settled. Thus, if the exemption applies, the file is not required to be disclosed at this time *991 under the law and the AG's question would be resolved. Consequently, we believe the applicability of the exemption was sufficiently invoked by the AG at the time of trial. Additionally, questions pertinent to a determination of the applicability of La. R.S. 44:3 were presented at trial, and the issue was before the trial court.
Turning to the applicability of the exemption provided by La. R.S. 44:3 to the facts of this case, we begin, as we must, with the language of the statute. Touchard v. Williams, 617 So.2d 885, 888 (La. 1993) ("[T]he starting point for the interpretation of any statute is the language of the statute itself.") (internal quotation omitted). The Louisiana Civil Code mandates that when a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without any further interpretation of the intent of the legislature. La. C.C. art. 9. Further, the words of a law must be given their generally prevailing meaning. La. C.C. art. 11. The plain language of the statute provides that nothing in the Public Records Act shall require disclosures of records held by the offices of the AG or the DA when the records pertain to pending or reasonably anticipated criminal litigation until the criminal litigation has been finally adjudicated or otherwise settled.
The provisions of the exemption apply to records, or the information contained therein, pertaining to pending or reasonably anticipated criminal litigation. The investigative file to which public access is sought was compiled and produced for the purpose of bringing and proving criminal charges arising from the circumstances surrounding the deaths following Hurricane Katrina at Tenet-Memorial. Everything in the file can be said to pertain to criminal litigation. Thus, if it can be said that criminal litigation is pending or reasonably anticipated in this case, then the entire file is covered by the exemption and is not required to be disclosed under the Public Records Law at this time.[14]
The issue then becomes whether criminal litigation is pending or reasonably anticipated in this case. All parties agree there is no pending criminal litigation related to the deaths following Hurricane Katrina at Tenet-Memorial. Rather, the issue is whether criminal litigation can be reasonably anticipated. The generally understood meaning of the term reasonably anticipated is reasonably foreseen or contemplated. The term reasonably anticipated does not require a certainty or even a near certainty. Thus, criminal litigation can be said to be reasonably anticipated when it is reasonably foreseen or contemplated. The plain language of the statute does not require a finding that criminal litigation will be pursued or will almost certainly be pursued for the exemption to apply. Rather, the exemption applies if it is reasonably foreseen or contemplated, i.e., if it is reasonably anticipated, that criminal litigation will be brought against some potential criminal defendant who was part of the investigation.
This court has previously established that the determination of whether a particular record falls within the exemption provided by La. R.S. 44:3(A)(1) must be made on a case-by-case basis. Cormier v. In re: Public Records Request of Giulio, 553 So.2d 806, 807 (La.1989). In making this determination in a specific case, the law "requires more than a judicial acceptance of an assertion of privilege by the prosecutor." Cormier, 553 So.2d at 807; Conella v. Johnson, 345 So.2d 498, 501 (La.1977). Rather, a thoughtful determination must be made following a contradictory hearing *992 wherein there is an opportunity for cross-examination and presentation of evidence to contradict the claim of privilege. La. R.S. 44:3(C); Cormier, 553 So.2d at 807; Conella, 345 So.2d at 501.
Thus, the determination of whether criminal litigation is reasonably anticipated within the meaning of La. R.S. 44:3 must be made on a case-by-case basis in the context of a contradictory hearing wherein the opportunity to present evidence and cross-examine witnesses is present. The determination must rest on more than an assertion by the prosecutorial authority that criminal litigation is or is not reasonably anticipated. Were the determination based solely on the testimony of the prosecutor, inconsistencies and caprice could enter the determination of whether the Public Records Act requires disclosure of the records at issue. The prosecutorial authority could change its mind, a new prosecutorial administration could enter office, new evidence could be discovered, a witness could come forward, or an absconded defendant could be found. The determination of whether criminal litigation is reasonably anticipated is subject to factors both within the prosecutorial authority's discretion and outside of its control.
We therefore find that a court's determination of whether criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3(A)(1) must be guided by objective factors. These factors must serve the dual purpose of protecting the public's right to know and safeguarding a prosecutorial authority's ability to preserve the integrity of an investigatory file when criminal prosecution is reasonably anticipated, which is the purpose of the limited exemption provided by the statute at issue. The determination should take into account, among other things the court finds relevant: whether criminal litigation may still be initiated given the prescriptive period of the offense to be charged; the temporal and procedural posture of each case; whether criminal litigation has been finally adjudicated or otherwise settled; the assertion of the prosecutorial authority as to its intent or lack thereof to initiate criminal litigation; whether the prosecutorial authority has taken objective, positive and verifiable steps to preserve its ability to initiate criminal litigation, including, but not limited to, preserving evidence, maintaining contact with witnesses, and continuing an investigation; the time it would take to appropriately investigate and try an offense; the prosecutor's inherent authority to determine whom, when and how he will prosecute, La.C.Cr.P. art. 61; the severity of the crime; the availability of witnesses, victims and defendants; the spoilation of evidence; the reasonable likelihood that a missing witness or an absconded defendant might be found; and the reasonable likelihood that additional witnesses might be willing to come forward with the passage of time. As always, the burden of proving that the record is not subject to inspection, copying, or reproduction by a member of the public rests with the custodian. La. R.S. 44:31(3).
In La. R.S. 44:3(F), the legislature appears to have recognized that in some cases a significant period of time may exist during which criminal litigation is reasonably anticipated. That subsection provides:
F. Notwithstanding any other provision of law to the contrary, after a period of ten years has lapsed from the date of death of a person by other than natural causes, and upon approval by the district court having jurisdiction over any criminal prosecution which may result due to the death of such person, any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of investigative *993 files or evidence or potential evidence, or any other record, document, or item relating to said death shall, upon request, provide copies of all such files, records, and documents to immediate family members of the victim and shall provide unlimited access for any and all purposes to all such evidence, potential evidence, and other items to any member of the immediate family and to any person or persons whom any member of the immediate family has designated for such purposes....
La. R.S. 44:3(F). Because the legislature recognized the great length of time in which criminal litigation can be reasonably anticipated in some cases, it provided a means by which the information contained in the investigative file could be obtained after the passage of ten years by certain members of the public whose right to access the information predominates; namely, the immediately family of the decedent.
Upon our review of this case, we find the record is insufficient to allow us to make a meaningful determination of whether criminal litigation is reasonably anticipated for purposes of La. R.S. 44:3. This case arose in the context of a public records request, and the parties seek to access, or prevent access to, the investigative file at issue based on the applicability of the Public Records Law. La. R.S. 44:3 provides an exemption from the required disclosure of records pertaining to any criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or settled. If it is determined that criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3(A)(1) in this case, then the entire investigative file is not required to be disclosed pursuant to the Public Records Act and the inquiry is at an end. We thus deem it necessary to remand the case to the trial court with instructions that it conduct a new contradictory hearing to determine whether criminal litigation is reasonably anticipated pursuant to La. R.S. 44:3 as that statute is interpreted herein.[15] Because a finding that criminal litigation is reasonably anticipated would resolve the case, we decline to discuss any remaining issues as such discussion could be unnecessary to the resolution of this case at this time and could constitute mere dicta and overreaching by the court.
The record in this case is insufficient for us to determine whether criminal litigation is reasonably anticipated under La. R.S. 44:3(A)(1) as interpreted herein. Thus, the judgments of the lower courts are reversed and set aside and the matter is remanded to the trial court for further proceedings as explained in this opinion.

Decree
For the reasons set forth above, in the matters of 2007-KK-1853 and 2007-KK-1870 we find that CNN lacked standing to intervene in the Orleans Parish Criminal District Court proceeding, and we hereby dismiss CNN from that action. Furthermore, although we find that a La. R.S. 15:41 motion for return of seized property is properly brought under the jurisdiction of a criminal court, we also find that documents and copies produced pursuant to a subpoena duces tecum are not "property seized" within the meaning of La. R.S. 15:41. As such, the district court herein was without authority under La. R.S. 15:41 to order their return. For these reasons, we reverse and set aside the judgment of the trial court, and remand this case to the trial court for further proceedings consistent with this opinion.
*994 For the reasons set forth above, in the matter of 2008-CC-1066 we find that La. R.S. 44:3(A)(1) exempts from the required disclosure under the Public Records Act records held by the offices of the Attorney General and the District Attorney that pertain to any criminal litigation which can be reasonably anticipated until such litigation has been finally adjudicated or otherwise settled. The record in this case is insufficient to determine whether criminal litigation can be reasonably anticipated as provided in La. R.S. 44:3(A)(1). Accordingly, we reverse and set aside the judgment of the lower courts and remand this case to the trial court for further proceedings consistent with this opinion.
2007-KK-1853-REVERSED AND SET ASIDE. CASE REMANDED TO THE CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS.
2007-KK-1870-REVERSED AND SET ASIDE. CASE REMANDED TO THE CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS.
2008-CC-1066-REVERSED AND SET ASIDE. CASE REMANDED TO THE 19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE.
VICTORY, J., concurs in part and dissents in part and assigns reasons.
KNOLL, J., dissents in part in nos. 07-KK-1853 and 1870 and concurs in the result in no 08-CC-1066, and assigns reasons.
WEIMER, J., concurs.
VICTORY, J., concurring in part and dissenting in part.
I agree that the Orleans Parish Criminal District Court has subject matter jurisdiction to entertain Tenet Memorial's motion for return of property under La. R.S. 15:41. La. R.S. 15:41 found in Title 15 of the Revised Statutes governing "Criminal Procedure" provides for the "Disposition of property seized in connection with criminal proceedings." La. R.S. 15:41(B) provides that property seized in connection with a criminal proceeding which is not to be used as evidence or is no longer needed as evidence "shall be returned to the owner," unless a statute declares it to be contraband. La. R.S. 15:41(C) provides that "[w]here the release of seized property is sought to by a person claiming to be its owner, it shall be released only upon motion contradictorily with the clerk of court."
The fact that this article is found in the statutes governing criminal procedure indicates that it applies to courts exercising criminal jurisdiction. Further, that La. R.S. 15:41(C) refers to the "clerk of court" can only mean, in the case of Orleans Parish, the clerk of the criminal court as that is where the documents are located.
Further, I would read this statute in light of La.C.Cr.P. art. 167, which also governs the custody and disposition of seized property, and which provides as follows:
When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.
This criminal code provision clearly gives the judge presiding over the criminal case the jurisdiction to order the return of property seized under a search warrant. Because of the unique jurisdictional status of the Orleans Parish Courts, because La. R.S. 15:41 is found in the provisions governing criminal procedure which can only be exercised by a criminal court, and because La.C.Cr.P. art. 167 gives the criminal court judge jurisdiction to return property seized pursuant to a search warrant, I *995 agree that the Orleans Parish Criminal District Court has subject matter jurisdiction over this matter.
However, I question the majority's finding that because the property sought to be returned was obtained by virtue of a subpoena instead of a search warrant, the documents do not constitute "property seized" within the meaning of La. R.S. 15:41 and that, therefore, the trial court was without authority to order the Attorney General to return the documents. In my view, the purpose of that statute is to provide a mechanism for returning property that in the hands of the government in connection with a criminal investigation that is not to be used as evidence or is no longer needed as evidence, regardless of whether the property was turned over by virtue of a search warrant or a subpoena. Further, the majority's distinction is irrelevant as the opinion later holds that in fashioning a remedy for a person whose property is given over pursuant to a subpoena, "the trial court on remand may fashion a reasonable resolution if it so desires." At p. 988 (citing La.C.Cr.P. art. 3). This would presumably include ordering the return of the property, which is exactly what the trial court did in granting Memorial's motion for return of the property.
This dispute centers only around the copies made by the Attorney General's office. I question whether Tenet-Memorial is the "owner" of the copies for the purposes of La. R.S. 15:41 and whether the legislature even intended that this article apply to copies. If the copies of documents obtained from Tenet-Memorial pursuant to subpoena are public records, then pursuant to La. R.S. 44:36, the custodian of the records must maintain the copies for at least three years from the date on which the public record was made. If Tenet-Memorial is allowed the return of copies made by the Attorney General, the public may never have a right to view these public records, which would be a violation of the Public Records Act. Therefore, I agree with the portion of the majority opinion holding that Tenet-Memorial is not entitled to the return of the copies under La. R.S. 15:41, but I question whether the trial court could fashion a remedy under La.C.Cr.P. art. 3 ordering the return of the copies made by the Attorney General as they may not be Tenet-Memorial's property, and return of all copies appears to conflict with La. R.S. 44:36 which requires that one copy of the original document be kept by the custodian. In any event, the opinion makes clear that the trial court may only fashion a remedy under La.C.Cr.P.art. 3 "following the finality of the proceedings" in 08-CC-1066, meaning that copies found to be public records may not be returned to Tenet-Memorial.
However, also regarding 07-KK-1853 and 07-KK-1870, I dissent from the majority's ruling that CNN lacks standing in this matter. The majority's reasoning rests on the erroneous proposition that the action for the return of property "has no logical nexus to CNN's asserted status, which is that of a party who has been denied the right to inspect or copy a public record." At 982. It is clear that if the documents were returned to Tenet-Memorial prior a determination being made in 08-CC-1066 as to whether they are public records, then CNN would lose its chance to inspect or copy the public records. Surely, that meets the requirement that the litigant "has an interest at stake in [the] litigation which can be legally protected." In re Melancon, 05-1702 (La.7/10/06), 935 So.2d 661, 668. Under Melancon, CNN is entitled to an adjudication of the claims it has asserted, which it may lose if the copies are no longer in the hands of the Attorney General. Therefore, I would find that CNN has standing to intervene against Tenet-Memorial in *996 the motion for return of property filed in Orleans Parish.
I dissent from the second portion of the majority opinion regarding 08-CC-1066, remanding the matter to the trial court to determine whether criminal litigation can be reasonably anticipated as provided in La. R.S. 44:3(A)(1). As the majority opinion states, the issue of whether the documents were subject to the exception in the Public Records Act that exempts documents from disclosure where criminal litigation is reasonably anticipated, La. R.S. 44:3(A)(1), was raised in the trial court. La. R.S. 44:3(C) requires that "[w]henever the same is necessary, judicial determination pertaining to compliance with this section or with constitutional law shall be made after a contradictory hearing as provided by law." The trial court held such a hearing, at which Orleans Parish Assistant District Attorney Michael Morales testified as follows:
Q. All right. And your office has confirmed that further criminal litigation on this matter is not going to be pursued; is that right?
A. Mr. Jordan was quite clear that this case is over.
. . .
Q. Is criminal litigation reasonably anticipated?
. . .
A. The case is over. My boss has said quite clearly, the case is over.
Assistant Attorney General Schafer testified regarding that issue: "It is my understanding that the District Attorney has said that he was not going to go forward in this matter in any way, shape or form and I think my boss has let it be known that this case is over as far at the attorney general's office is concerned."[1] In its final judgment, the trial court found that the documents were public records, subject to certain exceptions. See p. 979, n. 5. The trial court did not find that the documents were excepted from disclosure because criminal prosecution was reasonably anticipated. Upon review, the appellate court did not apply the manifest error standard to this factual ruling, but instead found that the documents at issue in this proceeding are exempted from disclosure under the Act under La. R.S. 44:3(A), reasoning that because there is no prescriptive period or statute of limitations with respect to homicide, "the criminal litigation was not finally adjudicated by the dismissal of charges by the district attorney or the grand jury's return of a no true bill."
I disagree with the majority's finding that a remand is necessary under its newly articulated factors. The cases cited by the majority, Cormier v. In re: Public Records Request of Giulio, 553 So.2d 806 (La. 1989) and Conella v. Johnson, 345 So.2d 498 (La.1977), stand for nothing more than the fact that La. R.S. 44:3(C) requires a contradictory hearing to determine whether La. R.S. 44:3(A)(1) applies. In Conella, the Court held that the trial judge erred in accepting the district attorney's assertion of the privilege, without giving the party seeking the records the opportunity to cross-examine him and present evidence to contradict the claim of privilege. Likewise, Cormier held that La. R.S. 44:3(C) requires more than the judicial acceptance of an assertion of privilege by the prosecutor in that there must be an opportunity for cross-examination and presentation of evidence to contradict the claim of privilege. In this case, the assistant attorney general and Orleans Parish assistant district attorney testified that their offices did *997 not anticipate further criminal litigation. The parties had an opportunity to cross-examine them and present evidence to contradict their testimony. Therefore, the appropriate contradictory hearing was held. Nothing in Cormier or Conella indicates that the prosecuting authority's testimony as to whether criminal litigation is reasonably anticipated is not sufficient to establish this fact. In Fryar v. Guste, 371 So.2d 742 (La.1979), this Court noted that La. R.S. 44:3(A)(1) does not apply where the district attorney regarded the matter as closed. In my view, the trial court's ruling should be reinstated as a contradictory hearing was held, no evidence was presented that criminal litigation is reasonably anticipated, and the trial court's judgment that this exception did not apply was not manifestly erroneous.[2]
However, instead of affirming the trial court's ruling, the majority remands the case so that the trial court can assess the issue under "objective factors" formulated by the majority. At p. 992. I dissent from the majority's decision to remand this case for the trial court to again decide the issue using these new factors. I would reinstate the judgment of the trial court in all other regards as well.
For the above reasons, I respectfully concur in part in 07-KK-1853 and 07-K1870 to the extent that no documents can be turned over to Tenet-Memorial until the finality of the proceedings in 08-CC-1066 as to whether the documents are public records; I dissent in the ruling in 07-KK-1853 and 07-KK-1870 that CNN lacks standing; and I dissent in the ruling in 08-CC-1066 and would reinstate the judgment of the trial court.
KNOLL, J., dissenting, in part, and concurring, in part.
As to Nos. 07-KK-1853 and 08-KK-1870 involving the Orleans Parish litigation, although I agree with the majority in its determination that CNN lacked standing to intervene in the Orleans Parish Criminal District Court proceedings, I respectfully disagree with its resolution of the question of whether the Orleans Parish Criminal District Court possessed the requisite subject matter jurisdiction to entertain Tenet-Memorial's motion for return of property.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La.Code Civ. Proc. art. 1. Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La.Code Civ. Proc. art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties or waived; a judgment rendered by a court *998 which has no jurisdiction over the subject matter of the action or proceeding is void. La.Code Civ. Proc. arts. 3 and 925. Boudreaux v. State, Dept. of Transp. and Development, 01-1329 (La.2/26/02), 815 So.2d 7; see also Whittenberg v. Whittenberg, 97-1424 (La.App. 1 Cir. 4/8/98), 710 So.2d 1157, 1158; Johnson v. Vinson Guard Service, Inc., 577 So.2d 56, 58 (La.App. 1 Cir.1990), writ denied, 578 So.2d 915 (La. 1991). The issue of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. Boudreaux, 815 So.2d at 13; Whittenberg, 710 So.2d at 1158; Tran v. Schwegmann's Giant Super Market, 609 So.2d 887, 889 (La.App. 4 Cir.1992). See also Gravois v. Travelers Indem. Co., 173 So.2d 550, 553 (La.App. 1 Cir.), writ denied, 247 La. 1016, 175 So.2d 301 (1965). Moreover, it is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. Boudreaux, 815 So.2d at 13; Renno v. Evans, 580 So.2d 945, 947 (La.App. 2 Cir.1991).
Louisiana jurisprudence treats an action for return of property under La.Rev.Stat.  15:41 as a civil action, even if criminal statutes govern it in part. See State ex rel. C.C., 03-0762 (La.App. 5 Cir. 12/9/03), 864 So.2d 663, 667; State v. Baynes, 96-0292 (La.App. 4 Cir. 7/31/96), 678 So.2d 959, 962; State v. Lamb, 26257 (La.App. 2 Cir. 10/26/94), 645 So.2d 791; State v. Mart, 96-1584 (La.App. 1 Cir. 6/20/97), 697 So.2d 1055, 1058.
Even though the majority attempts to rest its disposition on the fact that La.Rev. Stat.  15:41 bears a heading indicative of its inclusion as a matter associated with a criminal proceeding, I find that designation not dispositive of the issue. In State v. Page, 332 So.2d 427 (La.1976), a case originating with the Orleans Parish Criminal District Court, we recognized that although the underlying basis for declaring a person an habitual offender under the Motor Vehicle Habitual Offender Law, a criminal proceeding, also involves drivers license revocation proceedings which occurred because of that criminal proceeding, we held that latter revocation proceeding was nonetheless a civil proceeding and the Orleans Parish Criminal District Court lacked subject matter jurisdiction over such matter.
It is clear to me that although a nexus may exist between the initial proceeding in criminal court and the associated ancillary matter, this distinction between civil actions and criminal proceedings as applied in the case sub judice poses a jurisdictional problem. This threshold problem has a twofold basis: (1) the unique division in Orleans Parish between Criminal District Court and Civil District Court; and (2) the fact that in the matter now before us there is no present criminal matter pending in the Orleans Parish Criminal District Court.
Addressing La. Const. art. V,  32 (referencing Orleans Parish Courts and Officials) in State v. Francois, we explained, "This section [La. Const. art. V,  32] continues the former constitution's separation between the civil and criminal district courts in Orleans Parish." State v. Francois, 445 So.2d 416 (La.1983). In Francois, we held that in determining the question of jurisdiction the provisions of La. Const. art. V,  32 should be interpreted with regard to the Louisiana Constitution of 1921. Prior thereto, in State v. Page we explained the jurisdictional division in Orleans Parish of the Criminal District Court and the Civil District Court, and stated, in pertinent part:
Under the 1921 Louisiana Constitution the Civil District Court for the Parish of Orleans was vested with `the same exclusive *999 original civil jurisdiction as that of District Courts throughout the State....' La. Const. art. VII,  81 (1921). The original civil jurisdiction of the district courts alluded to in Section 81 was original jurisdiction `in all civil matters.' La. Const. art. VII,  35 (1921). Under that same 1921 Louisiana Constitution the Criminal District Court was vested with `exclusive jurisdiction of the trial and punishment of all crimes, misdemeanors and offenses committed within the parish of Orleans, the jurisdiction of which is not vested by this Constitution in some other court.' La. Const. art. VII,  83 (1921). There was, however, another provision of the 1921 Constitution which authorized the Legislature `by two-thirds vote of all members elected to each house' to change, alter or repeal any or all of the constitutional provisions covering the Criminal District Court for the Parish of Orleans. (FN6)
FN6. Article VII, s 87 of 1921 Constitution provided that: "The Legislature may, after January 1st, 1924, by a two-thirds vote of all members elected to each house, change, alter or repeal any or all of the above provisions covering the criminal courts of the City of New Orleans and parish of Orleans."
For two cases which discuss and apply this provision, See State v. Brady, 310 So.2d 593 (La.1975); Sciambra v. Edwards, 270 So.2d 167 (La.App. 1st Cir. 1972), writs refused, 273 So.2d 41.
Applying Page and Francois, it is clear to me the Orleans Parish Criminal District Court does not have subject matter jurisdiction to entertain Tenet Memorial's motion brought under La.Rev.Stat.  15:41. Although as recognized in Francois that "the legislature may completely abolish, partially erase or otherwise change the separation between these [Orleans Parish] courts by law," Id., 445 So.2d at 416, I find no specific statute that would authorize the Orleans Parish Criminal District Court to adjudicate motions to return property under La.Rev.Stat.  15:41 and the Legislature has not chosen otherwise. Accordingly, I would vacate the judgment of the trial court, finding the Orleans Parish Criminal District Court lacked subject matter jurisdiction, and dismiss Tenet Memorial's motion to return property.
As to the petition for declaratory relief filed in the 19th Judicial District Court, No. 08-CC-1066 in this Court, I concur in the result and offer the following reasons.
Initially, I observe the majority opinion fails to address the contention made by the Doe plaintiffs, LifeCare and Dr. Anna Pou that anyone can raise the exemption provided in La.Rev.Stat.  44:3(A)(1). Although I find no merit to this argument,[1] I nonetheless respectfully find that the failure to address this question robs this Court of an opportunity to lay this question to rest.
I also take issue with the majority's conclusion that a resolution of the question regarding the reasonably anticipated criminal litigation exemption precludes the necessity of addressing the question of whether the Louisiana Attorney General waived assertion of this exemption because it was not raised in the trial court. With all due respect to the majority, I find such treatment fails to address and resolve a threshold question which, if resolved in favor of CNN and the Times-Picayune, obviates the necessity of reaching the reasonably anticipated criminal litigation exemption.
I observe, as the majority does in passing, that this issue is complicated by the *1000 fact that Attorney General Charles Foti, the AG when this investigation was initiated and at the time the Orleans Parish special grand jury was convened, is no longer serving in this capacity. When asked at trial to address whether the AG's office was asserting any type of law enforcement privilege in general to the file the AG's office maintained,[2] the trial court was informed that no such general privilege was invoked. Thereafter, James "Buddy" Caldwell was elected as Louisiana Attorney General. In brief and at oral argument before this Court, the current AG vigorously invokes the public records exemption recognized in the Public Records Act. In this context and viewing the reasonably pending criminal litigation exemption in light of the purpose for that exemption, I find an agency's inaction, i.e., its failure to assert this exemption at trial, does not implicate its continued viability. See Hill v. Mamoulides, 482 So.2d 26, 29 (La.App. 5 Cir.1986)(holding that "[n]either the statutes nor the jurisprudence authorize any waiver of the exemption of privileged records from disclosure.").
In a related matter, although I disagree with the broad interpretation the appellate court gave to the question of whether criminal litigation was reasonably anticipated for purposes of La.Rev.Stat.  44:3(A)(1), I nonetheless find the trial court and the appellate court were presented with a full record of the investigative file with which to wrestle. In my view, it was the confluence two primary factors which complicated their review and which necessitate a remand of this matter: (1) the decision of the former AG to simply deposit a behemothic investigative record without vigorously asserting an exemption to disclosure of the individual documents; and (2) the AG's failure to provide an index which could properly allow a meaningful examination of the applicability of any law enforcement exemption to the individual documents.
In Conella v. Johnson, 345 So.2d 498 (La.1977), we made it clear that a "meaningful opportunity must be afforded for cross-examination and presentation of evidence to contradict the claim of [law enforcement] privilege." Id., 345 So.2d at 501. Similarly, in Winn v. City of Alexandria, the Court of Appeal, Third Circuit, addressing the public agency's right to a contradictory hearing as part of the decision-making process in a public record request, stated:
[T]he trial court erroneously limited the factors that it used in making its decision to the contents of the file. The record reveals no evidence that a contradictory hearing, as required by statute and Louisiana jurisprudence, was held at the time of the in camera inspection. The Rapides District Attorney should have been given the opportunity to rebut by argument and other evidence that the items sought by Winn were privileged and should not be disclosed.
Winn v. City of Alexandria, 94-206 (La. App. 3 Cir. 10/5/94), 643 So.2d 902, 905. Based upon this jurisprudence, I find it essential that each side in a public records dispute must be provided a meaningful contradictory hearing.
As noted hereinabove, the former AG chose not to assert the law enforcement privilege at the trial court hearing to the extent the current AG now embraces. Because *1001 of the procedural posture the AG adopted in this case at the time of trial, it is evident the lengthy hearings conducted did not fully explore the criminal litigation exemption as envisioned in the statutes and as developed in the jurisprudence.
Because the present case involves an excess of 50,000 pages of documents, I would call the parties' attention to the particularization needed in the application of the asserted law enforcement exemption. La.Rev.Stat.  44:3 requires more than judicial acceptance of a general assertion of privilege. Skamangas v. Stockton, 37,996 (La.App. 2 Cir. 3/5/02), 867 So.2d 1009, 1007, writs denied, 04-1099 (La.6/25/04), 876 So.2d 839, 04-1125 (6/25/04), 876 So.2d 843. A meaningful opportunity must be afforded for cross-examination and presentation of evidence to contradict the claim of privilege. Cormier v. In re Public Records of Request of DiGiulio, 553 So.2d 806, 807 (La.1989); Conella, supra; Freeman v. Guaranty Broadcasting Corp., 498 So.2d 218 (La. App. 1 Cir.1986); Elliott v. Taylor, 614 So.2d 126 (La.App. 4 Cir.1993). This does not mean the defendant must name the source or describe the informant or information with such particularity that the record is revealed before the judge adjudicates its disclosure. The nature of the document must be revealed, however, as well as the assertion of privilege so that the requesting party may engage in a meaningful cross-examination. Further, the assertion of privilege must be made individually as to particular documents, and not in globo against the entirety of a mass of records. Skamangas, supra; Freeman, supra.
Having called attention to the need for a meaningful contradictory hearing as required in La.Rev.Stat.  44:3(C) and considering the complexity of the record, I would further find it appropriate to provide guidance to the trial court, as the appellate courts did in Skamangas and Freeman, supra, on the manner to proceed in the adjudication of the public records request. In this regard, I find the following guidelines identified in Judge Guidry's partial dissent in the present case helpful and, as modified, would suggest them for implementation on remand, to-wit:
(1) All documents the Attorney General has provided as representative of its investigative file shall remain confidential and under seal with the 19th Judicial District Court and shall remain sealed pending expiration of appellate delays;
(2) An index[3] to the entire investigative file shall be required. This index shall be accompanied with a certification from the custodian that all contents of the file were included in the index. The index shall numerically reference each document and generally reference the substance of each document so that the general substance of each document is ascertainable while shielding the public from view of the specific content and/or potentially private or confidential data. This document shall remain confidential *1002 and be initially presented to the trial court, under seal, for an in camera inspection;
(3) The trial court shall conduct an in camera inspection of the index to ensure all contents of the investigative file are itemized and that adequate descriptions are available to the parties;
(4) Before making the index available to the parties, the trial court shall make all needed redactions to the index;
(5) The trial court shall set a reasonable time for the parties to present written challenges. Challenges shall be presented in response to a specific document as itemized in the index and shall not be made in globo;
(6) With regard to challenges, a representative of the Attorney General's Office shall have to state the particular privilege claimed and a meaningful opportunity for cross-examination shall be provided for each asserted privilege. Intervenors shall also be afforded the right to provide a specific challenge to a specific document;
(7) The trial court shall then examine each document and delete by excising, blocking out, cutting out or withholding in toto any reference to privileged information or issue a ruling declining the release of such documents. Any such judgment shall reference the specific document as itemized on the index.
In summation, in the determination of whether a public record is subject to disclosure, the applicability of a statutory disclosure exemption as to a specific document, once asserted, becomes central to a proper disposition of whether the law requires disclosure. Although the exemption must be weighed as part of the public records dispute, La.Rev.Stat.  44:3(C) and longstanding jurisprudence require a full contradictory hearing in the trial court on this issue. Therefore, because of the peculiar evolvement of the law enforcement exemption in the present case and my concern that the requirement for a full meaningful contradictory hearing was not met at the hearing in the trial court, I agree with the majority's reversal of the court of appeal's holding on the issue of the law enforcement exemption on the ground that its determination was overly broad.
Furthermore, I disagree with the majority's determination not to address the Does' contention that the AG's file, including material not presented to the grand jury and material prepared before the grand jury was impaneled, was considered secret. I find the failure to address this contentionÔÇöone which involves the AG's issuance of La.Code Crim. Proc. art. 66 subpoenas, the question of whether secrecy applies to any interviews the AG or the DA conducted with witnesses prior to the convening of the grand jury, and to what extent La.Code Crim. Proc. art. 434 may be applicable to correspondence between the offices of the AG and DAÔÇömay needlessly complicate the hearing on remand.
Finally, I find the majority opinion remiss in failing to address the Does' contention that they have a twofold right of privacy: first to maintain the secrecy of their identifies and also to any statements made by them to the AG's office. Regardless of the "reasonably anticipated criminal litigation" exemption delineated in La.Rev. Stat.  44:3, I find the Does' privacy issue viable and in need of resolution in this Court. In my view, the failure to address this concern in this forum further and needlessly clouds the proceedings on remand to the trial court.
For the foregoing reasons, I respectfully concur, in part, and dissent in 07-KK-1853 and 07-KK-1870, In Re: A Matter under Investigation, and concur only in the results of 08-CC-1066, Jane and John Does *1003 v. Charles Foti, Attorney General for the State of Louisiana, et al.
NOTES
[*] Calogero, C.J., retired, recused. Chief Justice Calogero recused himself after oral argument and he has not participated in the deliberation of this case. Traylor, J., retired. Justice Traylor retired after oral argument and he has not participated in the deliberation of this case following his date of retirement, May 31, 2009.
[1] LifeCare is a healthcare provider that rented space from Tenet-Memorial and operated a separate acute care facility on the seventh floor of Tenet-Memorial Medical Center.
[2] The record suggests that the grand jury was impaneled in February 2007, but did not convene until May, and conducted its meetings through July 2007.
[3] It has come to this court's attention that there exists a unique practice in some, if not all, of the divisions in the Orleans Parish Criminal District Court that mandates the filing of pleadings with the judge of each division rather than with the Clerk of Court for the Orleans Parish Criminal District Court. As a result, parties seeking to view the records have at times encountered difficulty identifying pleadings and filings, resulting in a decentralized and cumbersome system ripe for error and abuse. As noted in a letter dated September 11, 2008, from the Clerk of Court of the Orleans Parish Criminal District Court to this court, a search of the clerk's files revealed no records concerning this case.

The "record" filed with this court consists of an unpaginated file compiled through the efforts of Judge Calvin Johnson, retired, supernumerary judge appointed by this court for the purpose of gathering documents and filings related to this matter. The file presented to this court was not prepared by the Clerk of Court for the Orleans Parish Criminal District Court as required by La.C.Cr.P. art. 917, nor does it bear any certification, as required by La.C.Cr.P. art. 918, that the file lodged with this court is indeed the complete record of the trial court proceedings. Nevertheless, C.Cr.P. art. 917 provides that "[f]ailure of the Clerk to prepare and lodge the record on appeal either correctly or timely shall not prejudice the appeal...." In any case, the lack of an official record in this case raises our concern, and we urge the Orleans Parish Criminal District Court to address this procedures such that the Clerk of Court can abide by the responsibilities entrusted to him and perform the duties legally required of him.
[4] The AG scanned the documents in his file, assigned them a title and stored them on digital media. The index is a printout of the titles of the scanned items.
[5] Specifically, the trial court found that: (1) patient medical records and LifeCare's personnel and internal investigative files were not public records subject to disclosure, (2) documents received or produced by the AG prior to the date the Orleans grand jury was impaneled is not grand jury secret under La. C.Cr.P. art. 434 and should be released with limited exceptions, (3) certain correspondence between the AG and DA sent while the grand jury was impaneled was covered by grand jury secrecy and should not be disclosed, and (4) any additional document in the AG's file created or received after the grand jury was impaneled should be submitted to the trial court under seal for an in camera review to determine whether it communicated matters occurring at or directly connected to the grand jury meetings. The court further determined that the Does were not "confidential informants" pursuant to La. R.S. 44:3(B) and therefore did not have the right to keep their identities secret. The court ordered the AG to index the medical records contained in the file and deliver that index to the court under seal for further review. The trial court also ordered a variety of private information, including names, addresses, telephone numbers and social security numbers, to be redacted prior to any release. Finally, the trial court stayed the release of records produced pursuant to and in response to a search warrant or subpoena pending the final outcome of the proceeding initiated in the Criminal District Court for the Parish of Orleans.
[6] Guidry, J., dissented in part and concurred in part. Judge Guidry would have affirmed part of the trial court's judgment, but would have vacated that portion of the trial court's judgment regarding the distribution or release of the AG's investigative file. Judge Guidry would have found that that portion of the trial court's judgment was too vague and abstract, and was contrary to the spirit of the Public Records Act. Instead, Judge Guidry would have remanded the matter to the trial court and ordered proceedings consistent with a list of enumerated guidelines.

McClendon, J., also dissented in part. While Judge McClendon believed there was a reasonable anticipation of criminal litigation, she would have found that the right to object to the disclosure of the file is limited to those entities listed in La. R.S. 44:3(A). Because plaintiffs are not members of this class, she would have found they lacked standing to assert the privilege arising from the statute. Consequently, Judge McClendon would have remanded the matter to the trial court for it to determine which documents were protected under grand jury secrecy and, further, whether the AG, DA or any other entity designated in La. R.S. 44:3 was asserting the exceptions provided therein.
Finally, Welch, J., also dissented in part and concurred in part. On the showing made, Judge Welch would have found no error in the trial court's ruling.
[7] In brief to this court, the AG asserts that the original records were returned to Tenet-Memorial on Friday, September 14, 2007. Although the same analysis applies to both the originals and the copies for purposes of determining whether they are "property seized" within the meaning of La. R.S. 15:41, it appears only the copies are at issue at this point in the litigation.
[8] La. R.S. 15:41 provides, in pertinent part:

A. If there is a specific statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof.
B. If there is no such specific statute, the following governs the disposition of property seized in connection with a criminal proceeding, which is not to be used as evidence or is no longer needed as evidence:
(1) The seized property shall be returned to the owner, unless a statute declares the property to be contraband, in which event the court shall order the property destroyed if the court determines that its destruction is in the public interest; otherwise, Paragraph (2) of this Section shall apply.
[9] La. R.S. 15:41 provides for the destruction of controlled dangerous substances and their paraphernalia. The AG's construction of this statute would lead to an absurd result whereby a civil court would be called to determine when such property, which may still need to be utilized by the criminal court in which an action is being prosecuted, should be destroyed.
[10] In arriving at its conclusion, the Court recognized that significant jurisprudence tending to establish a contrary conclusion existed. Oklahoma Press, 327 U.S. at 202, 66 S.Ct. at 502. "Without attempt to summarize or accurately distinguish all of the cases, the fair distillation," in the Court's opinion, was that "the Fourth [Amendment], if applicable, at most guards against abuse only by way of too much indefiniteness or breadth in the things required to be `particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant." Oklahoma Press, 327 U.S. at 208, 66 S.Ct. at 505. The Court further explained any contrary suggestions or implications as (1) dicta, (2) the result of the presence of an actual illegal search and seizure, the effects of which the State later sought to overcome by applying the more liberal doctrine applicable to subpoenas duces tecum, or (3) the result of the scope of the subpoena being too broad or indefinite such that the subpoena, in effect, approached the character of a general warrant. Oklahoma Press, 327 U.S. at 207, 66 S.Ct. at 504-05.
[11] See also Dionisio, 410 U.S. at 9, 93 S.Ct. at 769, in which the Court stated:

The compulsion exerted by a grand jury subpoena differs from the seizure effected by an arrest or even an investigative `stop' in more than civic obligation. For, as Judge Friendly wrote for the Court of Appeals for the Second Circuit:
`The latter is abrupt, is effected with force or the threat of it and often in demeaning circumstances, and, in the case of arrest, results in a record involving social stigma. A subpoena is served in the same manner as other legal process; it involves no stigma whatever; if the time for appearance is inconvenient, this can generally be altered; and it remains at all times under the control and supervision of a court.' United States v. Doe (Schwartz), 457 F.2d at 898.
[12] This is, of course, not to say that subpoenas duces tecum can not implicate the Fourth Amendment. To the contrary, while valid subpoenas duces tecum do not constitute seizures, invalid subpoenas, which are defined by the Supreme Court as those that are not sufficiently limited in scope, relevant in purpose, or specific in directive such that compliance will be unreasonably burdensome, Donovan, 464 U.S. at 416, 104 S.Ct. at 773, may constitute illegal searches and seizures. Thus, absent a valid search warrant, they may violate the Fourth Amendment. Dionisio, 410 U.S. at 11, 93 S.Ct. at 770 ("This is not to say that a grand jury subpoena is some talisman that dissolves all constitutional protections.... The Fourth Amendment provides protection against a grand jury subpoena duces tecum too sweeping in its terms `to be regarded as reasonable.'") (emphasis in original). Stated differently, while valid subpoenas duces tecum are not in and of themselves searches or seizures, invalid, overly burdensome or unreasonable subpoenas can constitute, in practical effect, searches and seizures under the Fourth Amendment. Id. However, because Tenet-Memorial has advanced no argument to this court to the effect that the subpoenas in this case were overly broad or burdensome, or unreasonable, we need not address their validity in this opinion. See also Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), overruled in part on other grounds by Murphy v. Waterfront Com'n of New York Harbor, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
[13] La. R.S. 44:3(A)(1) refers to an exception provided in subsection (F), which provides:

F. Notwithstanding any other provision of law to the contrary, after a period of ten years has lapsed from the date of death of a person by other than natural causes, and upon approval by the district court having jurisdiction over any criminal prosecution which may result due to the death of such person, any prosecutive, investigative, and other law enforcement agency, or any other governmental agency in possession of investigative files or evidence or potential evidence, or any other record, document, or item relating to said death shall, upon request, provide copies of all such files, records, and documents to immediate family members of the victim and shall provide unlimited access for any and all purposes to all such evidence, potential evidence, and other items to any member of the immediate family and to any person or persons whom any member of the immediate family has designated for such purposes. The access granted shall include but not be limited to the examination, inspection, photographing, copying, testing, making impressions, and the use in any court proceeding of and conducting forensic studies on such evidence, potential evidence, and other items. For the purposes of this Subsection, the term "immediate family" shall mean the surviving spouse, children, grandchildren, and siblings of the victim.
[14] This is, of course, subject to any exceptions contained within the statute itself.
[15] As noted above, we need not reach the issues of grand jury secrecy and the plaintiffs' privacy rights at this time, but the trial court is not prevented from reaching them if, on remand, it concludes that criminal litigation is not reasonably anticipated.
[1] Although Assistant Attorney General Shafer was questioned and testified as to whether criminal litigation is reasonably anticipated, La. Const. art. IV,  8 provides that the Attorney General has no authority to institute a criminal prosecution absent an order of the court for good cause shown.
[2] I also question whether any other party but the State has a right to assert this exception. It seems to me that the exception from disclosure found in La. R.S. 44:3(A) exists for the benefit of the State and that the State is free to waive this exception, even if criminal litigation is pending or reasonably anticipated. This view is supported by La. R.S. 44:3(C), which as cited in part above, requires a contradictory hearing on this exception and provides that "[a]ny appeal by the State or an officer, agency or department thereof shall be suspensive." Thus, the legislature envisioned that only these parties would have the right to appeal an adverse ruling ordering the release of the documents and correspondingly, only these parties have the right to assert it. In this case, the La. R.S. 44:3(A) exception was first brought up by CNN in its memorandum in support of its cross-claim and motion for mandamus and preliminary injunction in an effort to show that no exception existed that would prevent the release of these public records.
[1] When I read La.Rev.Stat.  44:3(A)(1) in light of its purpose and effect, i.e., to protect pending litigation, I do not find support for the expansive reading of this statutory provision these parties advance. To the contrary, I find that only the listed agencies in La.Rev. Stat.  44:3(A) may assert the exemption found in La.Rev.Stat.  44:3(A)(1).
[2] The transcript indicates that the AG did invoke an exclusion for some documents or parts of documents, e.g., the file LifeCare volunteered to the AG pursuant to a confidentiality agreement, patient information, and similar personal data about employees, but did not exert the law enforcement exemption to particular items in its file. Rather, the AG simply presented its file in toto and left it to the trial court to determine what should and should not be released.
[3] My review of the record shows that on August 28, 2007, the trial court admitted into evidence two DVDs, containing documents of approximately 50,000 pages, that the AG offered and further ordered that this evidence remain under seal. At that same time, the AG introduced an index into evidence which purported to reference the documents on the DVDs. The testimony of Ellen Anderson, the AG investigative analyst who helped compile the index, revealed myriad problems with the index, i.e., the index lacked a systematic method of pagination; there was no way to tell from the face of the index what relationship any specific document had to the grand jury; an examiner of the index could not identify the documents separately and did not identify either the sender or recipient of any particular document; and there was no way to tell what was in the correspondence file, and whether that file contained subpoenas, memoranda or other like material.